## NEW YORK AND NEW ENGLAND RAILROAD COMPANY v. BRISTOL.

ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE OF CONNECTICUT.

No. 917.   Submitted January 8, 1894. — Decided February 5, 1894.

This court has jurisdiction over a decision of a state court that a statute of the State, compelling the removal of grade crossings on a railroad is constitutional, and a judgment in accordance therewith enforcing the provisions of the statute.

The act of the legislature of the State of Connecticut relating to railway grade crossings, (Act of June 19, 1889, c. 220, Laws 1889, 134,) being directed to the extinction of grade crossings as a menace to public safety, is a proper exercise of the police power of the State.

A power reserved by a statute of a State to its legislature, to alter, amend, or repeal a charter of a railroad corporation, authorizes the legislature to make any alteration or amendment of a charter granted subject to that power, which will not defeat or substantially impair the object of the grant or any rights vested under it.

Railroad corporations are subject to such legislative control as may be necessary to protect the public against danger, injustice or oppression; and this control may be exercised through a board of commissioners.

There is no unjust discrimination, and no denial of the equal protection of the laws, in regulations regarding railroads, which are applicable to all railroads alike.

The imposition upon a railroad corporation of the entire expense of a change of grade at a highway crossing does no violation to the Constitution of the United States, if the statute imposing it provides for an ascertainment of the result in a mode suited to the nature of the case.

BY section one of the act of the legislature of Connecticut of June 19, 1889, c. 220, entitled "An act relating to Grade Crossings," (Pub. Laws Conn. 1889, p. 134,) it was provided:

"The selectmen of any town, the mayor and common council of any city, the warden and burgesses of any borough within which a highway crosses or is crossed by a railroad, or the directors of any railroad company whose road crosses or is crossed by a highway, may bring their petition in writing to the railroad commissioners, therein alleging that public safety requires an alteration in such crossing, its approaches, the

method of crossing, the location of the highway, or crossing, the closing of a highway crossing and the substitution of another therefor, not at grade, or the removal of obstructions to the sight of such crossing, and praying that the same may be ordered; whereupon the railroad commissioners shall appoint a time and place for hearing the petition, and shall give such notice thereof as they judge reasonable to said petitioner, the railroad company, the municipalities in which such crossing is situated, and to the owners of the land adjoining such crossing and adjoining that part of the highway to be changed in grade; and after such notice and hearing, said commissioners shall determine what alterations, changes, or removals, if any, shall be made and by whom done; and if the aforesaid petition is brought by the directors of any railroad company, or in behalf of any railroad company, they shall order the expense of such alterations or removals, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public highway shall sustain by reason of any change in the grade of such highway, in consequence of any change, alteration, or removal ordered under the authority of this act, to be paid by the railroad company owning or operating the railroad in whose behalf the petition is brought; and in case said petition is brought by the selectmen of any town, the mayor and common council of any city, or the warden and burgesses of any borough, they may, if the highway affected by said determination was in existence when the railroad was constructed over it at grade, or if the layout of the highway was changed for the benefit of the railroad after the layout of the railroad, order an amount not exceeding one-quarter of the whole expense of such alteration, change, or removal, including the damages, as aforesaid, to be paid by the town, city, or borough in whose behalf the petition is brought, and the remainder of the expense shall be paid by the railroad company owning or operating the road which crosses such public highway; if, however, the highway affected by such order, last mentioned, has been constructed since the railroad which it crosses at grade, the railroad commissioners may order an amount not exceeding one-half of the whole

expense of such alteration, change, or removal, including the damages, as aforesaid, to be paid by the town, city, or borough in whose behalf the application is brought, and the remainder of the expense shall be paid by the railroad company owning or operating the road which crosses such public highway. The directors of every railroad company which operates a railroad in this State shall remove or apply for the removal of at least one grade crossing each year for every sixty miles of road operated by it in this State, which crossings, so to be removed, shall be those which in the opinion of said directors are among the most dangerous ones upon the lines operated by it, and if the directors of any railroad company fail so to do, the railroad commissioners shall, if in their opinion the financial condition of the company will warrant, order such crossing or crossings removed as in their opinion the said directors should have applied for the removal of under the above provisions, and the railroad commissioners in so doing shall proceed in all respects as to method of procedure and assessment of expense as if the said directors had voluntarily applied therefor."

Section 2 related to alterations of highways, one-fourth of the expense of which was to be paid by the State. Appeal from any decision of the commissioners under the act was specifically provided for.

On September 2, 1890, the railroad commissioners of the State of Connecticut made an order reciting that whereas the directors of the New York and New England Railroad Company had failed to remove or apply for the removal during the year ending August 1, 1890, of any grade crossing of a highway which crossed or was crossed by their railroad; and whereas in their opinion said directors should have applied for the removal of the grade crossing of their road and the highway known as Main Street in the town of Bristol; and directing a hearing upon the matter, with notice to the railroad company, the town, and the owners of land adjoining that portion of the highway. The hearing was had on several days, from September 24, 1890, to February 11, 1891, and the commissioners, being of opinion that the financial condition

of the company warranted the order, and that public safety required it, ordered the crossing removed, and determined and directed the alterations, changes, and removals to be made and done, and that they be executed by the railroad company at its sole expense, including damages occasioned thereby. The company appealed from this order to the Superior Court of the county of Hartford, the petition for appeal setting forth various grounds therefor, which by voluntary amendment and by direction of the court were reduced to these:

"1. On the 2d day of March, 1891, the railroad commissioners of this State made an order to said company, requiring the removal of the grade crossing of its railroad and Main Street in the town of Bristol, a full copy of which, marked Exhibit 'A,' is to be annexed hereto and filed herewith.

"1 *a.* Said company is not, and at the date of said order was not of sufficient ability to execute the work of making the changes required by said order, and its financial condition does not, and did not then warrant the making of such an order.

"11. Said company cannot meet the expenses of executing the said order of the railroad commissioners, and have enough income left to pay its fixed charges, including interest on its bonds issued as aforesaid and outstanding, and the dividends on its preferred stock issued as aforesaid, and maintain its railroad in good and proper condition.

"12. If the law under which the proceedings were had, as set forth in said order, justifies said order, then it and said law are void as violating both the Constitution of the United States and the constitution of the State of Connecticut, in that said order impairs the obligation of the contracts made by said company with the holders of its bonds and preferred stock by making it impossible for said company to pay the interest on their bonds and dividends on their preferred stock as agreed between them and said company, and yet maintain and operate its railroad efficiently, and further, in that it takes the property of said company without just compensation and without due process of law, and denies to it the equal protection of the laws.

"16. Said order, herein appealed from, was not an order necessary for the safety of the public.

"17. Said order should have been so made, and proceedings leading up thereto had, if at all, under section 2 of the act of 1889, as that one-quarter of the expense of its execution should be paid by the State."

Paragraph 1 a was substituted for paragraphs 2 to 10 inclusive, struck out by the court as mere statements of evidence.

The court, upon hearing the parties, the evidence not being preserved in the record, but it appearing that evidence was adduced by the company as to its earnings, expenses, and property, made findings of fact that the railroad company was of sufficient ability to execute, and that the financial condition of the company warranted, the order of the commissioners for the removal of the grade crossing in question; that the crossing was among the most dangerous upon the line of the railroad, and that the safety of the public required its removal; and affirmed the order appealed from. Thereupon the company prosecuted an appeal to the Supreme Court of Errors of Connecticut and assigned various errors to the rulings of the Superior Court in amendment of the petition on appeal, and in the exclusion and admission of evidence; and afterwards amended its reasons for appeal by adding the following:

"8. Because the court erred in holding that the statute under which said proceedings were had, as set forth in said order of the railroad commissioners, justified said order, instead of holding that it was no law, because contrary to the constitution of this State in that it takes the property of the plaintiff without just compensation and without due process of law.

"9. Because the court erred in holding that the statute under which said proceedings were had, as set forth in said order of the railroad commissioners, justified said order, and in therefore affirming said order, and overruling the plaintiff's claim that said statute was void as violating the Constitution of the United States, in that it impaired the obligation of the contracts made by said company with the holders of its bonds and preferred stock, by making it impossible for said company

to pay the interest on its bonds and dividends on its preferred stock, as agreed between them and said company, and yet maintain and operate its railroad efficiently, and further, in that it took the property of said company without due process of law, and denied to it the equal protection of the law.

"10. Because the court erred in overruling the claim of the plaintiff in the twelfth paragraph of its petition of appeal, that said statute was void, and was no justification of said order, under the Constitution of the United States and the Fourteenth Amendment thereof.

"11. Because the judgment does not meet the issues. There is no general finding of the issues against the plaintiff, and no finding as to issues raised in paragraphs 11 and 17."

The Supreme Court of Errors of Connecticut decided that there was no error in the judgment appealed from, (62 Connecticut, 527,) and thereupon a writ of error was allowed to this court, and errors assigned as follows :

"1. The said court erred in holding that the statute under which were had the proceedings as set forth in the order of the railroad commissioners exemplified in the record of the case justified said order, and in affirming the judgment of the Superior Court in and for Hartford County affirming said order, and in overruling plaintiff's claim that said statute was void as violating the Constitution of the United States in that it impaired the obligation of the contracts made by said company with the holders of its bonds and preferred stock by making it impossible for said company to pay the interest on its bonds and dividends on its preferred stock as agreed between them and said company, and yet maintain and operate its railroad efficiently ; and further, in that it took the property of the company without due process of law, and denied to it the equal protection of the law.

"2. The said court erred in overruling the claim of the plaintiff in error in the twelfth paragraph of its petition of appeal from the railroad commissioners to the Supreme Court as set forth in the record, that said statute was void and was no justification of said order under the Constitution of the United States and the Fourteenth Amendment thereof."

*Mr. Henry C. Robinson* and *Mr. John J. Jennings* for the motions to dismiss or to affirm.

*Mr. Charles E. Perkins* and *Mr. Edward D. Robbins* opposing.

It is conceded that in Connecticut the existing grades of both the railroads and the highways crossing them were legally established. When plaintiff's railroad was built through the town of Bristol many years ago, the legislature had enacted a special law giving to plaintiff's predecessor the right to cross highways, but at the same time giving to all persons sustaining damage from interference by the railroad company with a highway the same rights as to a judicial assessment of damages which were given to persons whose land was taken. By a subsequent act of the legislature it was provided that "the locations of the several railroad corporations in this State, of which the New York & New England Railroad Company has become and is a successor, and the construction of said road by and upon its centre line, and as adopted and in use by it, are hereby ratified, confirmed, and approved, and the same shall stand good and be for the use and benefit of the said New York & New England Railroad Company."

That was the condition of the rights of the plaintiff in error when the act of 1889 was passed.

I. The plaintiff in error contends that that act denies it the equal protection of the laws, to which it is entitled under the Constitution of the United States.

If the railroad commissioners and the Superior Court, after a fair hearing of both the plaintiff railroad company and the defendant town, had ascertained the degree of responsibility of each of the parties and had judicially assessed upon each a corresponding share of the expense, the case then presented would differ widely from that at bar. But, although it is admitted that justice would require the town to pay some, and perhaps a large part, of the expense, nevertheless, the town is favored by an exemption from its just share of the burden,

and the other interested party before the commissioners is by the terms of the law required to bear the burden of both. In other words, even in this aspect of the matter, as between it and the town, the railroad company is denied the equal protection of the laws.

II. Plaintiff claims that by virtue of this law and the order made thereunder, its property is taken without due process of law.

The Supreme Court of Connecticut justifies this taking of plaintiff's property by the following reasoning: "This statute is in its operation an amendment to the charter of each of the railroad corporations affected by it. It imposes on the plaintiff, being a corporation of that kind, an obligation which previous to its passage the charter of the plaintiff did not impose; but as that charter contained the provision that it might be altered at pleasure by the legislature, the statute is binding upon it."

The scope of this claim seems wider than that of the claim made in support of the attack by the legislature of New York on the Broadway Surface Railroad Company, yet the New York Court of Appeals held that claim to be contrary to the constitution, in *People* v. *O'Brien*, 111 N. Y. 1. In that case all that was attempted to be affected was a franchise created by an amendable charter. The Supreme Court of Connecticut holds, that because the charter of a corporation may be amended, there is no limitation on the rights of the legislature over the property of that corporation.

The right to amend the charter of a corporation does not include the right to arbitrarily deprive the stockholders of this corporation of what in substance is their property, held by them, it is true, for purposes of management and control, under a corporate organization created by a special law, but being nevertheless private property — not by virtue of any charter, but by force of the most fundamental and general laws of modern society, which from their nature necessarily protect alike and fully, all legitimate acquisitions of the members of the community, no matter whether held by them as individuals, partners, associations, or corporations.

Calling a railroad a highway does not make the person or corporation operating the railroad a piece of governmental machinery like the town; and because a State may lay taxes through the agency of the towns, and so pay for a public service, it does not follow that it may force a private corporation to use up its private property for the same purpose.

There is here admittedly no case of a legal nuisance or of a legal wrong of any kind committed by plaintiff, but the State is dealing in this law and the proceedings of the railroad commissioners thereunder, with crossings which were created in their present form nearly fifty years ago with full legislative authority, and which have received additional legislative sanction, less than fourteen years ago; and in applying to the plaintiff in a case of this kind rules applicable to joint tort-feasors, the State of Connecticut covers with only a thin disguise the taking of plaintiff's property without due process of law.

It is suggested that the plaintiff has had a hearing, and that this is enough to constitute due process of law.

There was a hearing on the question, how the highway should be carried over or under the railroad. There was also a hearing as to whether plaintiff's financial ability warranted the order. But before the hearings began at all, it was settled by the prejudgment of this extraordinary board of three men, that this particular one among the more dangerous crossings was the one to be removed; and, as a necessary consequence under the law, that no matter how much of the danger at the crossing is created by the condition of the adjoining highways for which the town of Bristol is alone responsible — no matter even, if, on investigation, it could be shown that in this case the railroad company is not responsible for any of the danger at the crossing, nevertheless, the railroad company is to pay for the whole work ordered.

Moreover, it should be noted that the railroad company is not required by this order to merely make reasonable changes in the grade of its railroad. Not only is it ordered to move its railroad tracks over to ground now occupied by substantial buildings, owned by private persons, and to build a costly

bridge, but it is also ordered to go entirely outside of its own location and to make safe and comfortable grades not merely on Main Street, but on two other compactly-built-up streets, named in the record at page 9, which do not cross the railroad at all, and is even to pay "the special damages which the owner of any land adjoining the public highways shall sustain by reason of any change in the grade of such highways."

It seems to the plaintiff that, when it is denied a hearing as to all the matters of primary importance, it is a hollow mockery to talk about its having its day in court, because it is allowed to be heard on a question so narrowed as merely to mean whether it can get money to pay this bill, or because its engineers are allowed to suggest modifications of the plans presented, so as to obviate the ordering of impracticable railroad construction.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The reasons of appeal to the Supreme Court were filed October 7, 1892, and assigned errors in the action of the Superior Court in dealing with various paragraphs of the petition of appeal from the order of the railway commissioners, and in the admission and exclusion of evidence, but contained nothing questioning the constitutionality of the law under which the proceedings were had until they were amended December 17, 1892, by adding the paragraphs raising that question. This tardiness in bringing the contention forward is perhaps not to be wondered at in view of the repeated adjudications of the Supreme Court of Connecticut sustaining the constitutionality of similar laws, as well as of this particular statute, and of the rulings of this court in reference to like legislation.

A motion to dismiss the writ of error for want of jurisdiction is now made, and with it is united a motion to affirm on the ground, in the language of our rule, (Rule 6, paragraph 5,) "that, although the record may show that this court has jurisdiction, it is manifest that the writ or appeal was taken

for delay only, or that the question on which the jurisdiction depends is so frivolous as not to need further argument."

We agree with counsel that this court has jurisdiction, but are of opinion that the principles to be applied in its exercise are so well settled that further argument is not needed, and that, this being so, the jurisdiction may be said under the circumstances to rest on so narrow a foundation as to give color to the motion to dismiss and justify the disposal of the case on the motion to affirm.

It must be admitted that the act of June 19, 1889, is directed to the extinction of grade crossings as a menace to public safety, and that it is therefore within the exercise of the police power of the State. And, as before stated, the constitutionality of similar prior statutes as well as of that in question, tested by the provisions of the state and Federal constitutions, has been repeatedly sustained by the courts of Connecticut. *Woodruff* v. *Catlin*, 54 Connecticut, 277, 295; *Westbrook's Appeal*, 57 Connecticut, 95; *N. Y. & N. E. Railroad Co.'s Appeal*, 58 Connecticut, 532; *Woodruff* v. *Railroad Co.*, 59 Connecticut, 63; *State's Attorney* v. *Branford*, 59 Connecticut, 402; *N. Y. & N. E. Railroad* v. *Waterbury*, 60 Connecticut, 1; *Middletown* v. *N. Y., N. H. & Hartford Railroad*, 62 Connecticut, 492.

In *Woodruff* v. *Catlin*, the court, speaking through Pardee, J., said in reference to a similar statute: "The act, in scope and purpose, concerns protection of life. Neither in intent nor fact does it increase or diminish the assets either of the city or of the railroad corporations. It is the exercise of the governmental power and duty to secure a safe highway. The legislature having determined that the intersection of two railways with a highway in the city of Hartford at grade is a nuisance dangerous to life, in the absence of action on the part either of the city or of the railroads, may compel them severally to become the owners of the right to lay out new highways and new railways over such land and in such manner as will separate the grade of the railways from that of the highway at intersection; may compel them to use the right for the accomplishment of the desired end; may determine that the

expense shall be paid by either corporation alone or in part by both; and may enforce obedience to its judgment. That the legislature of this State has the power to do all this, for the specified purpose, and to do it through the instrumentality of a commission, it is now only necessary to state, not to argue."

And as to this act, the court, in 58 Connecticut, 552, on this company's appeal, held that grade crossings were in the nature of nuisances which it was competent for the legislature to cause to be abated, and that it could, in its discretion, require any party responsible for the creation of the evil, in the discharge of what were in a sense governmental duties, to pay any part, or all, of the expense of such abatement.

It is likewise thoroughly established in this court that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the States, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury. *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Fertilizing Company* v. *Hyde Park*, 97 U. S. 659; *Barbier* v. *Connolly*, 113 U. S. 27; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Mugler* v. *Kansas*, 123 U. S. 623; *Budd* v. *New York*, 143 U. S. 517. And also that "a power reserved to the legislature to alter, amend, or repeal a charter authorizes it to make any alteration or amendment of a charter granted subject to it, which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the legislature may deem necessary to secure either that object or any public right." *Close* v. *Glenwood Cemetery*, 107 U. S. 466, 476; *Spring Valley Waterworks* v. *Schottler*, 110 U. S. 347; *Pennsylvania College Cases*, 13 Wall. 190; *Tomlinson* v *Jessup*, 15 Wall. 454.

. The charter of this company was subject to the legislative power over it of amendment, alteration, or repeal, specifically and under general law. Priv. & Spec. Laws Conn. vol. 5, pp. 543, 547; vol. 7, p. 466; vol. 8, p. 353; Spec. Laws Conn. 1881, p. 64; Stats. 1875, 278; Gen. Stats. 1888, § 1909; *N. Y. & N. E. Railroad* v. *Waterbury*, 60 Conn. 1.

The contention seems to be, however, that the legislature, in discharging the duty of the State to protect its citizens, has authorized by the enactment in question that to be done which is, in certain particulars, so unreasonable and so obviously unjustified by the necessity invoked as to bring the act within constitutional prohibitions.

. The argument is that the existing grades of railroad crossings were legally established, in accordance with the then wishes of the people, but, with the increase in population, crossings formerly safe had become no longer so; that the highways were chiefly for the benefit of the local public, and it was the duty of the local municipal corporation to keep them safe; that this law applied to railroad corporations treatment never accorded to other citizens in allowing the imposition of the entire expense of change of grade, both costs and damages, irrespective of benefits, on those companies, and in that respect, and in the exemption of the town from its just share of the burden, denied to them the equal protection of the laws.

And further, that the order, and, therefore, the law which was held to authorize it, amounted to a taking of property without due process, in that it required the removal of tracks many feet from their present location, involving the destruction of much private property; the excavation of the principal highway and those communicating; and the building of an expensive iron bridge, all at the sole expense, including damages, of the company, without a hearing as to the extent of the several responsibilities of the company and the town, or as to the expense of the removal of this dangerous crossing as compared with other dangerous crossings, or of the degree of the responsibility of the company for the dangers existing at this particular crossing. The objection is not that hearing was

not required and accorded, which it could not well be in view of the protracted proceedings before the commissioners and the Superior Court and the review in the Supreme Court, but that the scope of inquiry was not as broad as the statute should have allowed, and that the particular crossing to be removed was authorized to be prejudged.

It is further objected that the Supreme Court had so construed the statute that upon the issue whether the financial condition of the company warranted the order, no question of law could be raised as to the extent of the burdens, which a certain amount of financial ability would warrant, and thus in that aspect by reason of the large amount of expenditure which might be, and as matter of fact was in this instance, required, the obligation of the contracts made by the company with the holders of its securities was impaired. Complaint is made in this connection of the striking out by the Superior Court of certain paragraphs of the petition on appeal, held by that court and the Supreme Court to plead mere matters of evidence, and the decision by the Supreme Court that all the material issues were met by the findings. Those issues were stated by the court to be whether or not the company's directors had removed or applied for the removal of a grade crossing as required by the statute; whether or not the grade crossing ordered by the commissioners to be removed was in fact a dangerous one which the directors ought to have removed, or for the removal of which the directors ought to have applied; and whether or not the company's financial condition was such as to warrant the order.

And upon these premises it is urged in addition that the right to amend the charter of the corporation was not controlling, because that did not include the right to arbitrarily deprive the stockholders of their property, which, though held by them, for purposes of management and control, under a corporate organization created by special law, was, nevertheless, private property, not by virtue of the charter, but " by force of the most fundamental and general laws of modern society, which from their nature necessarily protect alike and fully all legitimate acquisitions of the members of the com-

munity, no matter whether held by them as individuals, or partnerships, or associations, or corporations."

The Supreme Court of Connecticut held that the statute operated as an amendment to the charters of the railroad corporations affected by it; that as grade crossings are in the nature of nuisances, the legislature had a right to cause them to be abated, and to require either party to pay the whole or any portion of the expense; that the statute was not unconstitutional in authorizing the commissioners to determine their own jurisdiction, and that, besides, the right of appeal saved the railroad companies from any harm from their findings; that it was the settled policy of the State to abolish grade crossings as rapidly as could be reasonably done; and that all general laws and police regulations affecting corporations were binding upon them without their assent.

We are asked upon the grounds above indicated to adjudge that the highest tribunal of the State in which these proceedings were had, committed, in reaching these conclusions, errors so gross as to amount in law to a denial by the State of rights secured to the company by the Constitution of the United States, or that the statute itself is void by reason of infraction of the provisions of that instrument.

But this court cannot proceed upon general ideas of the requirements of natural justice apart from the provisions of the Constitution supposed to be involved, and in respect of them we are of opinion that our interposition cannot be successfully invoked.

As observed by Mr. Justice Miller in *Davidson* v. *New Orleans,* 96 U. S. 97, 104, the Fourteenth Amendment cannot be availed of " as a means of bringing to the test of the decision of this court the abstract opinions of every unsuccessful litigant in the state court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded." To use the language of Mr. Justice Field, in *Missouri Pacific Railway* v. *Humes,* 115 U. S. 512, 520, " it is hardly necessary to say, that the hardship, impolicy, or injustice of state laws is not necessarily an objection to their constitutional validity; and that the remedy for evils of that character is to be sought from state legislatures."

The conclusions of this court have been repeatedly announced to the effect that though railroad corporations are private corporations as distinguished from those created for municipal and governmental purposes, their uses are public, and they are invested with the right of eminent domain, only to be exercised for public purposes ; that therefore they are subject to legislative control in all respects necessary to protect the public against danger, injustice, and oppression ; that the State has power to exercise this control through boards of commissioners; that there is no unjust discrimination and no denial of the equal protection of the laws in regulations applicable to all railroad corporations alike ; nor is there necessarily such denial nor an infringement of the obligation of contracts in the imposition upon them in particular, instances of the entire expense of the performance of acts required in the public interest, in the exercise of legislative discretion ; nor are they thereby deprived of property without due process of law, by statutes under which the result is ascertained in a mode suited to the nature of the case, and not merely arbitrary and capricious; and that the adjudication of the highest court of a State, that, in such particulars, a law enacted in the exercise of the police power of the State, is valid, will not be reversed by this court on the ground of an infraction of the Constitution of the United States. *Nashville &c. Railway* v. *Alabama,* 128 U. S. 96 ; *Georgia Railroad & Banking Co.* v. *Smith,* 128 U. S. 174 ; *Minneapolis &c. Railway* v. *Beckwith,* 129 U. S. 26 ; *Dent* v. *West Virginia,* 129 U. S. 114; *Charlotte, Columbia &c. Railroad* v. *Gibbes,* 142 U. S. 386; *Minneapolis & St. Louis Railway* v. *Emmons,* 149 U. S. 364.

*Judgment affirmed.*