Chicago Terminal Transfer Railroad Company v. City of Chicago.

Gen. No. 13,770.

1. RAILROADS—*when liability to repair viaduct arises.* A railroad by accepting an ordinance conferring upon it special privileges becomes obligated to perform the conditions of such ordinance which consist, among other things, of a requirement to keep viaducts in repair.

2. VIADUCTS—*upon whom duty rests to apportion cost of repair among railroads jointly obligated therefor.* It is primarily the duty of the city council to apportion among several railroads the cost of repairing a viaduct, such railroads being jointly liable for such repairs.

Trepass on the case. Error to the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed April 20, 1908. Rehearing denied May 4, 1908.

JESSE B. BARTON, for plaintiff in error.

592      APPELLATE COURTS OF ILLINOIS.

VOL. 140.] Chi. Term. Trans. R. R. Co. v. City of Chicago.

GEORGE W. MILLER, EMIL C. WETTEN and CHARLES M. HAFT, for defendant in error; EDWARD J. BRUNDAGE, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The City of Chicago sued the Chicago Terminal Transfer Railroad Company in the Municipal Court of Chicago for the sum of $4,009.11, and recovered a judgment therefor.

The parties will be referred to in this opinion respectively as the city and the railroad company.

The railroad company own and operate under appropriate city ordinances certain railroad tracks in the city of Chicago, which at Taylor street parallel the Chicago river on both sides. Certain tracks of the Chicago, Burlington & Quincy Railroad Company and of the "Pennsylvania Lines" also at this point parallel the railroad company's tracks for some distance north and south of Taylor street. Under certain other city ordinances a viaduct consisting of several spans was erected across all the railroad tracks above mentioned, which, with a bridge constructed by the city connecting with this viaduct at the east and west ends thereof, constitute an uninterrupted highway between those portions of Taylor street which lie east and west of the Chicago river.

On September 24, 1900, the city council passed an ordinance amending an ordinance passed July 16, 1900, granting certain rights to the railroad company, upon the further condition that it would keep in good condition and repair all viaducts then or thereafter erected spanning the tracks and right of way then or thereafter operated by it, which ordinance was accepted by the railroad company. While there is evidence that this amendatory ordinance was repealed December 8, 1902, there is no proof that it was not in force at the time the repairs in question were made.

A girder span composing part of the viaduct being in a condition of disrepair, and the railroad company

upon being notified of such fact by the city and re-
quested by it to make the necessary repairs, refusing
so to do, the city in the latter part of the year 1902,
at an expense of $17,117.39 put the same in a proper
condition of repair. The city procured reimburse-
ment for this outlay to the extent of the whole amount,
less the sum here in dispute, by the West Chicago
Street Railroad Company—who operated a double
track street railroad over the bridge and viaduct—
paying $5,090.05, and the Chicago, Burlington &
Quincy Railroad and the "Pennsylvania Lines" pay-
ing $4,009.11 each.

There is substantially no contest regarding the cost
of the repairs to the viaduct or the liability of the
railroad company to bear and pay a part of such cost.
But the question here projected concerns the amount
for which the railroad company is liable under the
facts in evidence and the law applicable thereto.

The railroad company insist that because their in-
terest is limited to one-half of one of the eleven tracks
under the Beach street span, that it is only liable for
the sum of $1,631.18.

Having in mind the contention of the railroad com-
pany in the Municipal Court and the admission con-
tained in its printed brief and in the oral argument
of the case in this court, the question of primary lia-
bility is not before us for decision. On the admitted
liability for a portion of the cost of such repair, the
question remaining for determination is as to what
portion of such cost is it liable. But were it other-
wise, and the record was barren of any admission of
liability, we think it clear that under the amended
ordinance of September 24, 1900, *supra,* the railroad
company assumed, by its acceptance of such amended
ordinance, a liability for keeping the viaduct in repair.
If it is to be held liable for an equitable part of such
cost, the facts entering into the calculations necessary
to be made in ascertaining such equitable proportion
must be established by the proofs. We find no evi-

594    Appellate Courts of Illinois.

Vol. 140.] Chi. Term. Trans. R. R. Co. v. City of Chicago.

dence in the record from which the court can make the calculation or fix the amount of such liability.

To apportion the cost of such repairs and determine whether or not such cost shall be apportioned among the companies whose tracks are laid under the viaduct, or whether such cost shall be paid by one of such companies, is primarily the duty of the city council. In illustration of this we cite C., B. & Q. R. R. v. Nebraska, 170 U. S. 57, and quote the following language of the Supreme Court of Connecticut, adopted by the court in N. Y. & N. E. R. R. v. Bristol, 151 U. S. 556:

" 'The legislature having determined that the intersection of two railways with a highway in the city of Hartford at grade is a nuisance, dangerous to life, in the absence of action on the part either of the city or of the railroads, may compel them severally to become the owners of the right to lay out new highways and new railways over such land and in such manner as will separate the grade of the railways from that of the highway at intersection; may compel them to use the right for the accomplishment of the desired end; may determine that the expense shall be paid by either corporation alone, or in part by both; and may enforce obedience to its judgment.' " The court further say in the Nebraska case: "Another ground of complaint is that the Act in question delegated to the municipality authority, in cases where two or more railway companies owning or operating tracks across public streets, to impose the cost and expense of constructing and maintaining viaducts over the same upon either or any of such companies, and that the city ordinance, in execution of such authority, imposes upon two of the four companies named in the record the entire expense of the repairs in question, and this is said to deny the plaintiff in error the equal protection of the laws. But it is not easy to see why the plaintiff in error can complain that the city omitted to bring in those companies as parties. Again it is

said that the apportionment made by the ordinance of the extent of the repairs, one-third to the plaintiff in error, and two-thirds to the Union Pacific Railway Company, was arbitrary, without notice, and contrary to plain principles of justice and equality. But if, as we have seen, it would have been competent for the legislature to put the burden of these repairs upon one of the parties, or to have apportioned them among the parties as it saw fit, so it may make a due apportionment through the instrumentality of the city council. The latter was not directed to proceed judicially, but to exercise a legally delegated discretion."

The need for the erection and maintenance of the viaduct as an approach to the bridge crossing the Chicago river at Taylor street and the grade at which such viaduct should be erected and maintained, arose from there being railroad tracks running parallel to the river, and the consequent necessity of crossing them by such viaduct. Whether the tracks were few or many, the viaduct was essential for the protection of foot and vehicular traffic. The power to determine which of the track owners should pay for repairs and maintenance is not vested in the law department of the city, its counsel or attorney, or in the engineering department of the city, but the city council, as we have seen, has full and exclusive control of the matter of such apportionment and may make such order as to the payment of the cost of such repairs as in its judgment it may deem proper. It has not done so, so far as the record discloses. By failing so to do, the city has not laid the foundation of a case entitling it to recover the amount of its claim so informally presented for payment.

The judgment of the Municipal Court, not being sustained by the evidence, is reversed, and the cause remanded for a new trial consistent with the views here expressed.

*Reversed and remanded.*