## QUINN et al. v. DOUGHERTY et al., Commissioners of District of Columbia.

Court of Appeals of District of Columbia.

Argued December 6, 1928. Decided January 7, 1929.

No. 4872.

Joseph A. Burkart, Harry I. Quinn, and George E. Sullivan, all of Washington, D. C., for appellants.

W. W. Bride and Alex H. Bell, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellants, plaintiffs below, filed a bill in equity to restrain the commissioners of the District of Columbia from proceeding to establish a fire engine house under the authority of an Act of Congress approved May 21, 1928. 45 Stat. 667. The act, after providing for the sale of a site already acquired for that purpose at Sixteenth and Webster streets, authorized and directed the commissioners "to erect a fire engine house, with furniture and

furnishings for a fire engine company, at the northwest corner of Sixteenth street and Colorado avenue, on property belonging to the United States." The act then provided for the use, in the construction of said fire engine house, of "the balance of the appropriations carried in the Acts of May 10, 1926, and March 2, 1927, for an engine house in the vicinity of Sixteenth street and Piney Branch road."

It is averred in the bill that the property set aside in the act of Congress is a part of Rock Creek Park, and is situated across the street from, and immediately adjacent to, the residences of the respective plaintiffs; that the Zoning Law and Regulations divide the District of Columbia into four use districts known as "(a) residential; (b) first commercial; (c) second commercial; and (d) industrial"—and that all the property here in question is located within the residential district. It is further averred that under the zoning regulations a fire engine house is not permitted within a residential district, although it is expressly permitted to be established in the other districts. It is also averred that under the Act of Congress of September 27, 1890, 26 Stat. 492, Rock Creek Park was established, and land taken and condemned for the purpose, to be "perpetually dedicated and set apart as a public park or pleasure ground for the benefit and enjoyment of the people of the United States, to be known by the name of Rock Creek Park." 40 USCA § 83.

It is averred that the predecessor in title of these plaintiffs in the ownership of plaintiffs' real estate at the time condemnation proceedings were instituted for the establishment of Rock Creek Park, was a party to those proceedings, and that the property was taken and compensation awarded her on the basis of creating the easements and privileges arising from the creation and establishment of a perpetual public park; that the plaintiffs established their homes in reliance upon the zoning law and regulations and upon the perpetual devotion of said park and every part thereof to the purposes of the trust expressly declared in the act of 1890 creating it.

It is then averred that "the peace and quiet of plaintiffs' said homes will be seriously, continuously, and irreparably disturbed and interfered with, if the said engine house, with the noises necessarily incident to its conduct and operation, be permitted to be placed in such immediate vicinity of plaintiffs' said homes. Moreover, the desirability of plaintiffs' said properties for first-class

residence purposes will be greatly lessened, if not altogether lost, and the sale of the same greatly depreciated and to an amount that cannot be accurately measured and determined, if the placing of said engine house be permitted to proceed."

The prayer of the bill is that the defendant commissioners be restrained, temporarily and permanently, from erecting said fire engine house upon the grounds in question, and for other and further relief. Defendants moved to dismiss the bill, and from a decree sustaining the motion this appeal was taken.

It is contended by counsel for the District that Congress, in establishing the engine house at the point defined by the act, was acting in the exercise of its general police power. We deem it of no importance whether or not the mere location and erection of a fire engine house is, strictly speaking, the exercise of police power. While it furnishes headquarters and housing for the men and equipment used in the public fire service, to protect the safety and property of the public at large, it is not such an agency that the protection and safety afforded is dependent upon its location at any particular given point. It may be assumed that the engine house in question could be located outside of this particular residential district, and furnish the same public protection that will be afforded if it is established at the point in question. Inasmuch as, under the zoning regulations, no provision is made for the establishment of fire engine houses in residential districts, it must be assumed that the zoning commission, in exercising the power conferred on it by Congress, considered the protection adequate by their location in the other districts. It appears in this case that the engine house could have been established at a more strategic point two blocks distant from the present site, where it would have been outside of a residential district and with little or no property damage to any one.

Unquestionably, if an engine house were such an agency of the public police that its location at a given point were necessary to secure the health, safety, good order, comfort, or even the general welfare of the community, it is settled law that neither the "contract" nor the "due process" clauses of the Constitution could interfere with the power of Congress in the premises. Slaughter-House Cases, 16 Wall. 36, 62, 21 L. Ed. 394; Munn v. Illinois, 94 U. S. 113, 125, 24 L. Ed. 77; Boston Beer Co. v. Massachusetts, 97 U. S. 25, 33, 24 L. Ed. 989; Mugler v. Kansas, 123 U. S. 623, 665, 8 S. Ct. 273, 31 L. Ed. 205; Crowley v. Christensen, 137 U. S.

86, 89, 11 S. Ct. 13, 34 L. Ed. 620; New York & N. E. R. Co. v. Bristol, 151 U. S. 556, 567, 14 S. Ct. 437, 38 L. Ed. 269; Texas & N. O. R. Co. v. Miller, 221 U. S. 408, 414, 31 S. Ct. 534, 55 L. Ed. 789. But even then, if its establishment amounted to the taking of private property, the taking could only be accomplished after due compensation had been awarded.

As suggested, we regard it of little importance whether the mere designation of the location of a fire engine house by the municipal authority—in this instance by the Congress—is the exercise of police power, since it may well come within the limitation placed by the courts upon the power to change the use of a public park from the original object for which it was perpetually dedicated. It is settled law that the municipality, in grading streets or in regrading them, if performed in a careful manner, is not liable in damages to adjacent property owners; but if the street is occupied by a private enterprise, for a use different from or additional to that originally contemplated, as, for example, a railroad, though under grant from the city, adjacent property owners are entitled to compensation for damages inflicted by such occupation. In other words, the taking of property for a public use is limited to the particular use for which it is taken, and creates in abutting and adjacent property owners rights and easements which must be protected, and where property is condemned and taken for the purpose of a street, it cannot be afterwards converted to other uses detrimental to abutting and adjacent property owners without just compensation. Lahr v. Metropolitan Elevated Railroad Co., 104 N. Y. 268, 291, 10 N. E. 528; Dana v. Rock Creek Railroad Co., 7 App. D. C. 482; Story v. New York Elevated Railroad Co., 90 N. Y. 122, 43 Am. Rep. 146.

■ There is a well-established distinction between the dedication of a street to the public use and the dedication of a park or common to such use. When land is dedicated for a public park by the municipality, it inures to the benefit of all its citizens. It is held in trust for the benefit of the public, without power to convey or divert to other uses. Announcing this fundamental rule, the Supreme Court of Alabama, in Douglass v. City Council of Montgomery et al., 118 Ala. 599, 24 So. 745, 43 L. R. A. 376, held that one who can look from the front of his house with an unobstructed view upon a park near by can maintain injunction to restrain the diversion of the use of a public park from the purpose for which it was originally dedicated, although he may not be an abutting owner. In that case the city undertook to grant a railway company the right to construct and operate a railroad track across the park. The court in a well-considered opinion held that the city council could be restrained from permitting the railroad company to so occupy the park. In the course of the opinion, the court said:

"There is a marked difference between the uses and trusts as ordinarily imposed in the dedication of streets or highways in a city, and those imposed in the dedication of public squares or commons, and in the use and enjoyments of the people therein. The municipality may allow uses in the one that it cannot in the other. The uses of each are distinct, and the rights of abutting proprietors on each are different. It is allowed, generally, that such a proprietor as to a street owns to its center, but there is no such right, or anything accruing from it, in an abutter on a park. The street must be kept open, as long as used, but the park may be inclosed, improved, and ornamented for pleasure grounds and amusements, for health and recreation. 17 Am. & Eng. Enc. Law, 416. In speaking of this difference between the rights of property owners attingent to a street and a public common, dedicated to public uses, this court, in Sheffield & T. Street R. Co. v. Rand, 83 Ala. 294 [3 So. 686], said the rule of law was entirely different when applied to the two; that 'the purpose for which such dedication is made, the use or changing uses to which it may be applied, and many other distinguishing characteristics, demonstrate that neither the rule nor the reason of the rule, on which the law of the street or highway rests, can be made applicable to a public common. The differences will naturally suggest themselves, and we need not attempt their enumeration.' "

■ This brings us to another principle of law, which we think is well grounded, that where a portion of a tract of land is taken under eminent domain for a particular public purpose, the damages awarded take into consideration the benefits inuring to the portion of the particular tract not taken. When the lands here in question were condemned for the establishment of Rock Creek Park to a public use for the benefit, not only of adjacent property owners, but for all the citizens of the District, the advantages inuring to the property not taken, but involved in the condemnation proceeding, and which embraces the property of the plaintiffs in this case, were taken into consideration. The per-

petual easement of an unobstructed view into the park, and other advantages that greatly inured to the benefit and enhancement of the value of plaintiffs' property, were matters involved in the original condemnation proceeding.

It follows, therefore, that any new use inconsistent with that for which the land was originally taken constitutes a new and additional servitude thereon, requiring additional compensation. In Cincinnati v. White, 6 Pet. 438, 8 L. Ed. 452, involving the interest of adjacent property owners in a public common dedicated to the public use, the court said:

"All public dedications must be considered with reference to the use for which they are made, and streets in a town or city may require a more enlarged right over the use of the land, in order to carry into effect the purposes intended, than may be necessary in an appropriation for a highway in the country; but the principle, so far as respects the right of the original owner to disturb the use, must rest on the same ground, in both cases, and applies equally to the dedication of the common as to the streets. It was for the public use, and the convenience and accommodation of the inhabitants of Cincinnati, and, doubtless, greatly enhanced the value of the private property adjoining this common, and thereby compensated the owners for the land thus thrown out as public grounds. And after being thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel in pais, which precludes the original owner from revoking such dedication. It is a violation of good faith to the public, and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted."

We are not impressed by the argument that plaintiffs have a complete and adequate remedy at law. The damage inflicted is of such an irreparable character as to almost amount to confiscation, and the difficulty of ascertainment of adequate compensation, coupled with the total lack of public necessity for this invasion of plaintiffs' rights, alone justifies equitable intervention. On the other hand, if plaintiffs had resorted to a suit for damages against the District, they would possibly have been met with the defense that a fire engine house, with its equipment, is a governmental function, for which the District would not be liable for damages resulting from its establishment or operation.

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.