THE PEOPLE EX REL. CITY OF DENVER v. THE UNION
PACIFIC RAILWAY COMPANY.

SAME v. THE UNION PACIFIC, DENVER & GULF RAILWAY
COMPANY.

SAME v. THE BURLINGTON & COLORADO RAILWAY COM-
PANY.

SAME v. THE DENVER & RIO GRANDE RAILWAY COMPANY.

1. RAILROADS—STREET CROSSINGS.

When railroad companies lay their tracks across public streets, such occupation of the street is subject to the condition that they will do whatever a reasonable public necessity may require to maintain the street as a highway. The duty so to do is a continuing one, enlarging from time to time, as changed conditions render the mode adopted inadequate, and the legislature has ample power to require such changes as public safety and convenience may reasonably require.

2. SAME.

In order to compel railroad companies to bridge a street along which their track is laid and continuously used, it is not necessary to vacate the street or give it over entirely to the use of railroads.

3. SAME.

The city of Denver may by ordinance require railroad companies to bridge their tracks over a street according to plans prepared by the city, provided a reasonable necessity therefor be shown to exist and the plans proposed be found to be feasible and adequate for the purpose. The performance of such requirement may be compelled by mandamus.

*Error to the District Court of Arapahoe County.*

MANDAMUS to compel certain railroad corporations to construct a viaduct over their tracks on Nineteenth street in the city of Denver. In the district court the proceedings were dismissed for insufficiency of the petitions. Petitioner brings error.

Concurrent actions were brought by the city against each railroad company having tracks intersecting or extending along Nineteenth street in the city of Denver. The facts

are identical in each case and in this court the actions were consolidated under number 2884, for the purpose of argument and determination. The actions were all brought to enforce the provisions of the following ordinance of the city of Denver:

" SECTION 1. *Whereas*, the construction and operation of a great number of railroad tracks that intersect and extend along Nineteenth street, in the city of Denver, had and does impede travel upon said street to a great extent, and has made the said Nineteenth street dangerous for public travel thereon as a highway.

" SEC. 2. Therefore all railroad companies, the tracks of which intersect or extend along Nineteenth street, in the city of Denver, are hereby required to construct at their own expense a good and sufficient viaduct of the width of fifty feet, over and across their said tracks at a height of twenty-two feet in the clear above such tracks. Where the distance between any two of said railroad tracks is not sufficient to permit an approach to the viaduct over each track from the ground, to be made at a grade of not to exceed seven per cent, then the railroad company owning each of such tracks shall build such viaduct at said height to a point midway between said tracks, and in such manner as to make the same one continuous viaduct over such tracks. They are also hereby required to construct, at their own expense, good and sufficient approaches to such viaduct or viaducts, at a grade of not to exceed seven per cent ; and such railroad companies their successors and assigns, shall thereafter, at their own expense, keep and maintain said viaduct or viaducts and the approaches thereto in a good state of repair. Said viaduct or viaducts to be constructed entirely of iron or steel cross-beams and supports set on substantial stone foundations; the longitudinal joists between such cross-beams to be of iron, steel or wood, and the floor to be of wood. Such viaduct or viaducts, and the approaches thereto, shall be set in said Nineteenth street so as to leave an equal distance of said street unoccupied on each side of the same.

"The said viaduct or viaducts to be constructed with a roadway thirty-eight feet in width for vehicles, and with sideways six feet in width upon each side of such roadway for foot passengers. The said approaches shall be constructed of good and substantial stone abutments and stone and earth approaches, or said approaches may be constructed of the same material as the said viaduct or partly of each. The width of said approaches to be thirty-eight feet in the clear from the street until the same reaches a height of at least twelve feet above the street, and for that distance the approaches shall be used only as a roadway and from that point until they meet the viaduct the approaches shall be of the same width as the viaduct, with the roadway and sideways to conform thereto. At the point on said approaches where the sideways begin there shall be constructed stairways of iron or wood leading to the sidewalk below on Nineteenth street. Said viaduct or viaducts and approaches on the outside thereof shall have good and substantial iron or steel railings.

"SEC. 3. The work of constructing said viaduct or viaducts and approaches thereto shall be commenced in good faith within sixty days after the passage of this ordinance, and shall be actively continued thereafter until said viaduct or viaducts be completed and ready for travel, which shall not be later than six months after the passage of the said ordinance.

"SEC. 4. Upon the completion of such viaduct or viaducts and approaches, the railroad companies whose tracks run under the same shall not be required to keep either flagman or gateman at the crossings of their tracks with said Nineteenth street.

"SEC. 5. Upon the completion of such viaduct or viaducts any of the railroad companies aiding in the construction of such viaduct or viaducts, shall have the privilege of constructing across said Nineteenth street, under said viaduct or viaducts, such new railroad tracks as may be necessary

without any special permission of the city council first had and obtained."

Authority to pass the foregoing ordinance is claimed under the following provisions of the charter of the city of Denver, to be found on page 127 of the acts of 1889:

"The city council shall have power by ordinance * * * SEC. 46. To regulate the use of locomotive engines, to direct and control the location of cable and other railroad tracks, and to require railroad companies to construct at their own expense such bridges and their approaches, tunnels or other conveniences at public crossings, and such viaducts and their approaches over their tracks, where the same cross or extend along public highways or streets, and to put such streets in such condition and state of repair, as not to interfere with the free and proper use of such street or crossing, as the city council may deem necessary, and where viaduct or viaducts cross the tracks of several railroad companies, to compel them to build their proportion of a continuous viaduct or viaducts over said tracks with their approaches, and to regulate the rates of speed of all railroad trains within the city limits, and their stops at street crossings."

Mr. JOHN F. SHAFROTH, Mr. F. A. WILLIAMS and Mr. A. B. SEAMAN, for plaintiff in error.

Messrs. TELLER & ORAHOOD and Messrs. WOLCOTT & VAILE, for defendants in error

CHIEF JUSTICE HAYT delivered the opinion of the court.

The duty of railroad and other companies crossing highways to relieve the danger and inconvenience of such crossings, has been long recognized under the common law.

In *City of Minneapolis v. St. Paul, M. & N. Railway Company*, 35 Minn. 131, this rule is stated as follows:

"The common law rule is that where a person or corporation is given the right to build a railroad, or make a canal,

across a public highway, this gives them no right to destroy it as a thoroughfare, but they are bound to restore or unite the highway at their own expense, by some reasonably safe and convenient means of passage, although the statute contains no express provision to that effect. This duty includes the doing of whatever is necessary to be done to restore the highway to such condition; as, for instance, in case of a bridge, the approaches or lateral embankments, without which the bridge itself would be useless. This duty is founded upon the equitable principle that it was their act, done in pursuit of their own advantage, which rendered this work necessary, and therefore they, and not the public, should be burdened with its expense."

The following cases are cited in support of the foregoing rule: *King v. Inhabitants of Lindsey*, 14 East, 317; *King v. Kerrison*, 3 Maule & S. 526; *Leopard v. Chesapeake & Ohio Canal Co.*, 1 Gill, 222; *Northern Cent. Ry. Co. v. Mayor of Baltimore*, 46 Md. 425; *Eyler v. Co. Comm'rs Alleghany Co.*, 49 Md. 257; *In re Trenton Water Power Co.*, 20 N. J. Law, 659; *People v. Chicago & Alton R. Co.*, 67 Ill. 118; *Queen v. Inhabitants of Isle of Ely*, 15 Q. B. 827; *Paducah, etc., R. Co. v. Commonwealth*, 80 Ky. 147.

The statute and ordinance relied upon in support of the present actions are evidently not for the purpose of curtailing the duty imposed by the common law, but rather for the purpose of making the duty explicit and free from doubt. Although it may have been optional with the railroad companies in the first instance to have laid their tracks at the street grade, or above or below such grade, the duty to leave the public a reasonably safe and free passage was the same in each instance. And there can be no doubt that the duty is a continuing one, and that the legislature has ample power and authority to require such changes from time to time as the public safety or convenience may reasonably require. A railroad with a single track crossing at grade may inconvenience the public but little, while by increasing the number of tracks and trains to meet the requirements of a growing pop-

ulation and enlarged traffic, the inconvenience and hazard may be increased to such an extent as to practically deprive the public of any beneficial use of the street.

In the case of *Commonwealth v. Proprietors of New Bedford Bridge*, 2 Gray, 339, it was held under an act of the legislature authorizing the erection of a bridge over a navigable river " with two suitable draws which should be at least thirty feet wide," that the duty of the corporation was not discharged by making the draws thirty feet in width, this being adequate for the accommodation of commerce by the vessels in use at the time the bridge was constructed, but that the duty was a continuing one, requiring the corporation to enlarge the draws from time to time as the same should become necessary by reason of the larger size or change in model of vessels navigating the river.

Likewise, in *Cooke v. Boston & Lowell Railroad Cor.*, 133 Mass. 185, it was held, in an action for personal injuries resulting from an insufficient bridge maintained over its tracks by the railroad company, that it was bound to provide a bridge suitable for the increased travel, and that even if the bridge was adequate for the purpose when built and an increased use rendered it inadequate, the corporation must alter the bridge. The authorities are believed to be uniform to the effect that when railroad companies lay their tracks across public streets, such occupation of the street is subject to the condition that they will do whatever a reasonable public necessity may require to maintain the street as a highway, and that this duty is a continuing one, enlarging from time to time as changed conditions render the mode adopted inadequate. *Commonwealth v. Proprietors of New Bedford Bridge, supra; Maltby v. Chicago & W. M. Ry. Co.*, 52 Mich. 108; *City of Minneapolis v. St. Paul, M. & M. Ry. Co., supra; State ex rel., etc., v. St. Paul, M. & M. Ry. Co.*, 38 Minn. 246; *State ex rel., etc., v. Minneapolis & St. L. Ry. Co. et al.*, 39 Minn. 219.

The foregoing principles are conceded by counsel in this case, but it is argued that the petitions do not show a rea-

sonable public necessity for the proposed viaduct.    This contention is not borne out by the record.    From this it appears that Nineteenth street is intersected by twenty-two tracks that would be spanned by the proposed viaduct; that trains are "continually" passing over these tracks at all hours of the day and night; "That the said Nineteenth street between said Wazee and Central streets, is situated in a populous part of the city of Denver and is one of the most important thoroughfares connecting North Denver, which has a population of some twenty thousand people, with what is known as East Denver, having a population of about eighty thousand people.    That only four streets connect said North Denver with said East Denver.

"That in addition to the tracks of defendants which extend across said Nineteenth street, there are also a large number of tracks which have been constructed across said Nineteenth street by divers other railroad companies, against whom proceedings in mandamus are concurrently brought herewith to compel the performance of the same duty.

"That ever since the year 1889, the passing of said trains on the various railroad tracks crossing the said part of Nineteenth street became so constant that it interfered with and impeded to such an extent the public travel on said Nineteenth street, that in order to restore said highway to a reasonably safe and passable condition it became necessary that a viaduct should be constructed over and across said tracks in Nineteenth street, together with suitable and convenient methods of approach to the same. * * *

"That the defendants and other railroad companies, though said necessity for said viaduct still exists, and the same is necessary for the safety of the public in the use of the said Nineteenth street, have refused and neglected to begin the construction of the same. * * *

"That without said viaduct said Nineteenth street at said crossings is unsafe for public travel and public use, by reason of said railroad tracks crossing the same, and by reason

of the constant running and operation of engines, cars and trains over and across the same by defendant." * * *

It would seem that the necessity for the proposed viaduct is made plain by the foregoing averments, but counsel base an argument upon the allegation to be found in the petition that only four streets connect North Denver with East Denver. The claim is that the petition should have shown that the other three streets could not be conveniently utilized for the accommodation of the public in passing between the two sections of the city named. We do not think this claim is well founded, particularly in view of the fact that it appears from the plat which is filed as a part of the petition, that of the other three streets the one nearest Nineteenth street is several blocks away from that thoroughfare.

The only other ground relied upon by the defendants to overthrow the application of the petitioner for a writ of mandamus is stated as follows :

" That it appears from the petition herein and from the ordinance therein set forth that it is proposed by the petitioner to continue and maintain Nineteenth street at a grade as a public thoroughfare across the tracks of these defendants and at the same time to compel these defendants to construct a new and different thoroughfare over and across the tracks of these defendants without compensation therefor."

The argument in support of this objection is founded upon the principle that if a burden is to be imposed, it must be imposed in such a manner as not to inflict upon the defendants unnecessary costs and expenses ; and to this end it is urged that, as a condition precedent to the right of the city to compel the erection of a viaduct over the railroad tracks, a new grade for Nineteenth street must be established above, corresponding with the grade of the proposed viaduct, and the street below entirely given over to the use of the defendants, or vacated. We think the argument unsound when applied to the case as now presented. It is apparent from the plat which is made a part of the petition and relied upon by counsel representing all parties, that to entirely vacate Nineteenth

street at the surface would to be to deprive a large number of people and an extended territory from access by teams to either East or North Denver, while by the ordinance enacted, care has been taken to provide for the accommodation of the public in such a manner as to inconvenience the least possible number of people and at the same time to make the burden of constructing the viaduct as light as possible. The cost of a viaduct the full width of the street would certainly be much more than one of the width required by this ordinance.

In *State v. The St. P., M. & M. Ry. Co., supra,* the action was brought at the relation of the city of Minneapolis to compel the defendants to build certain bridges over their tracks and approaches to the same. One of the defendants objected to the plan proposed by the city and in lieu thereof proposed another and different plan which it was willing to accept, but the court being of the opinion that the plan proposed by the relator was suitable, appropriate and adequate for the purpose, the writ of mandamus was ordered accordingly. In that case the plan included a bridge over contiguous tracks of two railway companies, and it was apparent that they could not agree upon a plan. In this case there are four defendants, and if it were left to them to determine the character of the structure to be erected, it is not at all probable that any plan would meet with the approval of all. Hence the advisability of having a plan prepared by the city in the first instance. And in case the plan proposed is found feasible and adequate for the purpose, the erection of the viaduct in accordance therewith may be enforced, provided a reasonable necessity therefor is shown to exist.

What we have hereinbefore said is predicated entirely upon the allegations of the petitions and their sufficiency. Upon these we conclude upon principle and authority that the petitions are sufficient in form and substance, hence the motion to quash should have been overruled and the defendants required to answer.

It is not for us to anticipate the character of the answers

that may be interposed.   When the case is fully presented by proper pleadings and proofs, it will be for the trial court upon the facts and circumstances as they then appear, and the law applicable thereto, to determine whether or not the city is entitled to the relief sought by these actions.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*