The People of the State of New York ex rel. The Western New York and Pennsylvania Railroad Company and Samuel G. De Coursey, its Receiver, *v.* Mahlon B. Adams and Others, Composing the Common Council of the City of Rochester, and Others.

*Designation by a common council of the land to be taxed for a contemplated improvement, when invalid — certiorari to review an assessment, when not affected by the transmission of an assessment roll.*

Where, after a fair examination by the common council of a city, in a matter within its jurisdiction, of the various properties that might be benefited by a contemplated improvement, it designates certain ones to be taxed and relieves others, its conclusion, if not fraudulent, must stand; but where the common council, in effect, makes no such examination and casts the burden upon a single piece of property with the purpose of enforcing some extraneous right or duty claimed to exist, but in no way connected with or enforcible by the statutory proceedings in which it is engaged, and excludes other properties, which from the facts and surroundings must of necessity be benefited by the improvement, it proceeds upon wrong premises, and its proceedings and the assessment growing out of them are invalid.

It is only when city officers have jurisdiction of the subject-matter and conduct their proceedings in a manner consistent with the statute that their proceedings are conclusive.

Chapter 326 of the Laws of 1880, like all other statutes, should receive a reasonable construction, and it is not intended thereby to impose the duty upon the

PEOPLE ex rel. W. N. Y. & P. R. R. CO. v. ADAMS.   123

Hun.]                    Fifth Department, June Term, 1895.

railroad company therein named, in constructing crossings over the streets of the city of Rochester, of building structures that will withstand the enormous weight of the cars of an electric street railway having a weight greatly in excess of that of the vehicles that would ordinarily pass over the streets of such city.

Although an assessment roll passes into the hands of the treasurer of the city of Rochester, before a certiorari is obtained to review the same, the common council of such city and its assessors may be compelled to reverse their action if they have committed an error, since, under the charter of such city, its common council has the power, at any time after the confirmation of the assessment roll, to reconsider its action in the premises and proceed *de novo*.

Where it is shown upon the return to a writ of certiorari that, in the imposition of a tax, the officers of a city proceeded upon a wrong basis; essentially failed to comply with the statute which they invoked in making their determination in relation to the subject-matter; did not pursue the matter in the mode required by law, and violated the law to the prejudice of the relator, the assessment and all of the proceedings leading up to the same will be vacated and annulled.

Certiorari issued out of the Supreme Court and attested on the 10th day of February, 1894, directed to Mahlon B. Adams and others, composing the common council of the city of Rochester, Henry C. Munn, Edward B. Burgess and George F. Roth, assessors of the city of Rochester, and to Samuel B. Williams, treasurer of the city of Rochester, county of Monroe and State of New York, commanding them to certify and return to the office of the clerk of the county of Monroe all their proceedings, decisions and actions, together with a record of all the proceedings had before them in relation to an assessment upon the relator for the construction of a bridge over its tracks.

*Charles J. Bissell*, for the relator.

*A. J. Rodenbeck, City Attorney*, for the respondents.

Ward, J.:

The relator, the Western New York and Pennsylvania Railroad Company, is enjoying the franchise secured from the State by chapter 326 of the Laws of 1880 whereby the banks and prism of the old Genesee Valley canal could be occupied by a railroad from Rochester to the Pennsylvania line.   Section 5 of that act imposed upon the railroad corporation the duty, within the city of Roches-

124 PEOPLE ex rel. W. N. Y. & P. R. R. CO. *v.* ADAMS.

FIFTH DEPARTMENT, JUNE TERM, 1895.          [Vol. 88.

ter, of depressing its tracks below grade at the crossing of any streets in the city, and to provide a suitable overcrossing thereat under the direction of the surveyor of the city. The relator's road crosses Bronson avenue in the heart of the city, and the relator for a considerable time had maintained an overcrossing or bridge over the said street for the passage of the public, which had been sufficient for public use until the summer of 1892, when a street railway company in the city desired to extend its lines to Bronson avenue and over said crossing for the use of its road, upon which its cars were to be propelled by electric power. An examination of the bridge was made by a railroad engineer, and he reported that it was not safe to transport over it the cars of the street railway company weighing fifteen tons, followed by a trailer weighing eight and a half tons, and that there was some weakness about the bridge, and that a new one was needed. This street railway company communicated to the common council of the city the result of this examination, and suggested that the relator was under statutory obligation to provide a suitable bridge over the tracks at the place named. Bronson avenue was built up of structures consisting of residences and business places to the track of the railroad on either side of the street, and a large number of people were accommodated by the bridge in question. The chief benefit that the relator derived from the structure was the right of passage thereunder along its tracks. The common council appointed a committee to confer with the relator and induce it to make a new structure that would answer the purposes of the street railway company, but it failed in the undertaking, and then proceedings were taken by the common council to construct a new bridge at this point as a public improvement in the city, under its charter, which permitted proceedings for the purposes of public improvements, the statute (Laws of 1880, chap. 14, § 170) providing that the whole expense should be paid " by a local assessment* be assessed *upon all the lots* and parcels of lands to be benefited thereby in proportion to the benefit which each will derive therefrom."

The common council directed the city surveyor to make an estimate of the cost of the new structure, and he reported an estimate of the expense thereof at the sum of $6,700.

---

*Sic.

The common council adopted an ordinance in effect providing for the construction of the bridge; that its cost should be the amount recommended by the surveyor, and also providing that the lands of the relator within the city of Rochester (describing them) should be deemed benefited by the construction of the bridge, and that the entire expense should be assessed thereon.

Pursuant to this ordinance the city assessors assessed this sum upon the relator's property alone, and upon the review day provided by statute the relator appeared before the assessors and objected to the tax, and to the authority of the assessors of the city to assess it, and claimed that their proceedings were without authority and void. No attention was paid to this protest, but the assessment roll was confirmed by the common council and passed over to the city treasurer for collection; but, under the charter, the common council had power at any time after the confirmation of the assessment roll to reconsider the same and to take further proceedings.

The usual proceedings in such cases were taken by the common council to perfect an assessment and to give notice to the public. It does not appear that it took any evidence except such as appealed to the senses.

The petition for the writ of certiorari and the return thereto disclose, in effect, that the whole proceeding was aimed at the relator, and that it was intended to make its property pay the tax upon the theory that it was liable, under the act of 1880, to construct just such a bridge at this crossing as the city authorities might by ordinance demand, and that the common council proposed to enforce such obligation through the taxing machinery of the city.

The petition showed, uncontradicted by the return, the facts hereinbefore stated as to Bronson avenue and the property along it and surrounding the crossing, and the people and property benefited thereby, but, as we have said, no other property was assessed except that of the relator; not even the property of the street railway for whose benefit this new structure was required.

The fundamental provision of the charter, that the burden of the assessment should be upon all the lots benefited thereby, was utterly disregarded.

While it is doubtless true that if, after a fair examination by the council in a matter within its jurisdiction of the various properties

126 PEOPLE ex rel. W. N. Y. & P. R. R. CO. v. ADAMS.

Fifth Department, June Term, 1895. [Vol. 88.

that might be benefited by the improvement, it designates certain ones to be taxed and relieves others, and its conclusion is not fraudulent, it must stand; but where the common council, in effect, makes no such examination, and excludes all properties that from the facts and surroundings must of necessity be benefited by the improvement, and casts the burden upon a single property, and that with the purpose but slightly concealed of enforcing some extraneous right or duty claimed to exist, in no way connected with or enforcible by the statutory proceedings in which it is engaged, it proceeds upon wrong premises, and its proceedings and the assessment growing out of it are invalid.

The defendants claim that the relator had the newspaper notice of the proceedings of the common council required by the city charter, and should have appeared and made allegations against such proceedings, and that failing to do so it is concluded by the action of the city authorities. They also claim that under the city charter the action of the council is conclusive and final and cannot be inquired of here. A single answer disposes of both of these contentions. It is only when city officers have jurisdiction of the subject-matter and conduct their proceedings consistently with the statute that their proceedings are conclusive.

Assuming that the relator was under statutory obligation to build a new bridge over the street, it could only be compelled to do so by an appropriate action in which the relator could be heard as to its liability. The relator should have its day in court, which it has never had. It is possible that the city, upon giving notice to the relator to construct the bridge, and it failing to do so, could have constructed the bridge and brought an action against the relator for the expense, and then the relator could have been heard upon the question of the necessity for a bridge and of the expense thereof. Neither of these proceedings was adopted. The city officers simply determined that the structure must be built strong enough to carry the heavy cars of the street railway company, which no ordinary bridge could sustain, and which it was not in the contemplation of the statute that the relator should be required to build. This statute of 1880 (Chap. 326), like all other statutes, should receive a reasonable construction. The Legislature certainly did not intend thereby to impose upon the railroad company, in constructing its cross-

PEOPLE ex rel. W. N. Y. & P. R. R. CO. *v.* ADAMS. 127

Hun.]                    Fifth Department, June Term, 1893.

ing over the numerous streets in the city that its tracks should inter-sect, the building of structures that would withstand such enormous weight, which is far beyond that of the vehicles that ordinarily pass over the streets and highways. An indication of the legislative view upon this subject may be gathered from chapter 526 of the Laws of 1887, which provides, in effect, that no town shall be liable for any damage resulting to a person or property by reason of the breaking of any bridge by a traction engine weighing over four tons crossing the same, and in the revision of the Highway Law in 1890, section 154 of chapter 568, in the case of the breaking of a bridge by an engine weighing over four tons, the owner of the engine is made liable for damages.

The defendants made a point that the assessment roll having passed into the hands of the treasurer before the certiorari was obtained it is now too late to compel the common council and the assessors to reverse their action if they have committed error, as their power is spent. The point is not well taken, for, as before said, the common council still have the power to reconsider their action and proceed *de novo.*

It is clear to us that in the imposition of this tax the city officers proceeded upon a wrong basis. They have essentially failed to com-ply with the statute that they have invoked in making their deter-mination in relation to the subject-matter. They have not pursued the matter in the mode required by law, and they have violated the law to the prejudice of the relator.

The assessment, therefore, and all of the proceedings leading up to the same by the common council should be vacated and annulled, with fifty dollars costs, and the disbursements of the relator to be paid by the defendants.

Lewis and Bradley, JJ., concurred.

The proceedings and assessment vacated and annulled, with fifty dollars costs and disbursements.