Upon entering the City of Wilmington, the plaintiff company, before it could lay its track across Fourth Street, at a point then within the city limits, was compelled to cut through a considerable embankment, thereby necessitating the building of a bridge over the cut in order that travel and transportation should not be obstructed or delayed over the street. The territory within the city limits and contiguous to the bridge has never been built up, nor have streets been actually laid off there. The highway which, at the bridge, is called Fourth Street, was the old public road leading out from the city before the city limits were extended. The bridge, when it was built, was, and is now, sufficient for the ordinary purposes of travel by foot and horse and vehicle transportation. The defendant railway company has commenced to run street cars over the bridge, and has determined to run them in sections of from two to four cars at a time. The defendant company refuses to unite with the plaintiff in the maintenance of the bridge in order to meet, as the plaintiff contended, the larger servitudes imposed upon it by the defendant company's cars, and to provide the necessary conveniences at the intersection as required of them by sub-section 6, section 1957, of The Code. The plaintiff alleges further in the complaint, "that if the said defendant Street Railway Company is allowed to operate its cars over the said bridge, there is great danger of the same giving way and accidents being thereby caused; and in (522) the event of such accidents the plaintiff may be involved in vexatious litigation and actions for alleged damages to its loss and injury by reason of the fact that the said bridge is inadequate to support the running of the heavy cars defendant Street Railway Company proposes to run and operate over said bridge." The complaint concludes with a prayer for judgment that the defendant company be enjoined from carrying out its proposed action.
A demurrer was filed and the ground assigned is that the complaint shows that the plaintiff company laid its track, dug the cut and built the bridge across Fourth Street after the limits of the city had been extended beyond the bridge, and that neither the proposed action of the defendant company nor its action in the past imposes, or will impose, any additional servitude upon the bridge or upon the street of which said bridge forms a part, and that, therefore, no cause of action is set out in the complaint of the plaintiff. The demurrer was sustained.
The demurrer raises the question whether or not the running of street cars by an incorporated street railway company over a bridge already constructed by a railroad company within the city limits and sufficient *Page 362 
for the ordinary uses of the public, imposes an additional servitude upon the bridge. It would seem that the principle of law underlying the question, stripped of unnecessary verbiage, is a simple one. In the solution of the matter it is only necessary to consider two propositions; first, the nature of the liability to the public, imposed upon the plaintiff company at the time of the construction of the bridge; and, second, what continuing liability, if any, was and is imposed upon the plaintiff as to the maintenance of the bridge.
The law undoubtedly imposed upon the plaintiff company, at the time the bridge was built, the obligation to put up such a structure as would be sufficient for the then needs of the public as to travel and (523) transportation over the street or highway. It is also well settled by the authorities that the plaintiff company was under the further obligation of maintaining a bridge of such proportions and strength as would meet the continuing demands of the public in reference to travel by foot and horse and the ordinary vehicle transportation over the street. The growth in population and the building up of cities and trade, while probably increasing the expenditures of the plaintiff company in maintaining the bridge to meet changing conditions, also increase the business and profits of the plaintiff company, and thereby compensate it for its additional outlay on account of the added burden of servitude which these things produce. But does the obligation imposed upon the plaintiff extend any further than to maintain a bridge equal to the demands of the public for foot and horse travel and ordinary vehicle transportation? Can the obligation be extended to include the use of the bridge for the running of heavy street cars over it by a corporation formed for the profit of its stockholders and whose chief purpose is private gain and not for the public good? It seems to us that to state the question is to answer it in the negative. Street railways are, in a certain sense, highways, but not in the strict sense are they public ways; for their owners have private rights of property in the franchise and they are operated for the private benefit of the stockholders. The public benefit from street railways is only incidental. It is beside the question to argue that, because the laying of a street railway track and the running of street cars do not impose any additional servitude upon the rights of the abutting proprietors in the land used for a public street, therefore the running of street cars over a bridge constructed by another corporation and sufficient for all other purposes than the running of street (524) cars over them, does not impose additional servitude upon the bridge. There is no analogy in the two propositions and the same law is not applicable. The abutting owners along a street have either granted easements over the street or have been compensated for the taking of their property for the public uses; and under the circumstances *Page 363 
they will not be allowed to complain of those modes of travel or transportation over the streets which have been sanctioned by the proper authorities, or to demand additional compensation for such uses to which the street is put unless such uses materially impair the rights of the abutters and are made necessary for the sole use and benefit of the street railway company. Elliott on Roads and Streets, 558. In all cases where the abutting proprietors dedicate the street, or are paid for the property to be used as a street, there is a presumption that they intend that the street may be used by street railways, provided the ordinary and usual street uses are not destroyed or impaired to the real detriment of the public. The presumption does not apply to ordinary railroads, however. In Dillon's Municipal Corporations, section 722, the author writes: "Such proprietor must be taken to contemplate all improved and more convenient modes of use which are reasonably consistent with the use of the street by ordinary vehicles and in the usual modes." But the plaintiff has received no benefit or compensation in any shape from the defendant company for the use of the bridge by defendant's street cars, nor has the defendant company shared the expense of building or maintaining the bridge; and the plaintiff company, therefore, owes the defendant no duty to furnish at plaintiff's cost and risk a safe passage for defendant's street cars over the bridge to the end that the defendant company may conduct its business, profitable only to its own stockholders, without risk or expense. That would simply be an appropriation of the property of one to the benefit of another without (525) compensation, and that could not, of course, be allowed.
We are of the opinion that the plaintiff stated a good cause of action in its complaint, and that there was error in the ruling of the court.
Error.
Cited: Hester v. Traction Co., 138 N.C. 291.