WILLIAM E. BRIDEN *et al., vs.* N. Y., N. H. & H. R. R. Co.

MAY 18, 1906.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ

(1) *Highways.    Bridges    Railroads.    Mandamus.*

Section 11 of the act of incorporation of the Providence and Worcester Railroad Company provides: "If the said railroad shall cross any highway, the said railroad shall be so constructed as not to impede or obstruct the safe and convenient use of such highway. And the said corporation shall

have power to raise or lower such highway so that the said railroad, if necessary, may conveniently pass under or over or across the same. And if the said corporation shall raise or lower any such highway and shall not so raise or lower the same as to be satisfactory to the town council of the town in which said highway may be situated, said town council may require in writing of said corporation such alteration or amendment as they shall deem necessary."

The railroad company constructed over its tracks a highway bridge, and thereafterwards the Pawtucket Street Railway Company was incorporated, and by ordinance of the city was granted authority to lay rails extending over the tracks of the railroad company and to operate cars of a greater weight than the strength of the bridge to bear.

The board of aldermen of Pawtucket passed a resolution directing the railroad company to strengthen the bridge, which the company refused to do unless the railway company contributed to the expense.

The bridge was sufficiently strong to sustain the weight of the ordinary highway traffic.

On *mandamus* brought against the railroad company:—

*Held,* that, as it was not a statutory duty of the city to make its highways safe and convenient for the passage of electric cars, it had no standing to insist upon the proposed alteration of the bridge. The question was one which concerned the street railway company, or perhaps the public, not the city in its corporate capacity.

*Held,* further, that the clause of the charter providing that the raising or lowering of a highway must be made to the satisfaction of the town council had no application; but where it did apply, and the railroad company refused to obey the order, it was the duty of the town to make the alteration and then recover the expense by action.

MANDAMUS. Heard on appeal from decision of Superior Court. Appeal dismissed.

PER CURIAM. We approve so much of the decision of the Superior Court as holds that the city of Pawtucket has no standing to insist upon the proposed alteration of the bridge in question, for the reason that inasmuch as it is not a statutory duty of the city to make its highways safe and convenient for the passage of electric cars it can have no concern to inquire whether a greater duty is imposed upon the respondent railroad company. If the whole duty of the city in regard to the bridge is imposed upon the railroad company, as is admitted, it has no reason to complain. The question which the board of aldermen attempt to raise is one which concerns the electric railroad company, or perhaps the public, not the city of Pawtucket in its corporate capacity.

And we may further observe that the clause quoted from the charter providing that the raising or lowering of a highway to accommodate the railroad must be made to the satisfaction of the town council has no application to this case.   Where this clause does apply and the railroad company refuses to obey the order of the town council, it is the duty of the town to make the alteration itself and then to recover the expense by action at law against the railroad company.

The appeal is dismissed, the judgment affirmed, and the petition remanded to the Superior Court for further proceedings.

## DECISION.

MUMFORD, J.   This is a petition for a writ of *mandamus* preferred on behalf of the city of Pawtucket by the members of the board of aldermen of that city, to compel the respondent, the New York, New Haven and Hartford Railroad Company, to alter, amend, and strengthen a bridge maintained over its tracks as a continuation of Lonsdale avenue.

The case is submitted to the court on an agreed statement of facts by which it appears that the Providence and Worcester Railroad Company was incorporated, by the General Assembly of this State, in 1844; section 11 of the act of incorporation, so far as it bears on this case, is as follows:

"And if the said railroad shall in the course thereof, cross any canal, turnpike, or highway, the said railroad shall be so constructed as not to impede, or obstruct the safe and convenient use of such canal, turnpike, or other highway.   And the said corporation shall have power to raise or lower such turnpike or highway, so that the said railroad, if necessary, may conveniently pass under or over, or across the same.   And if the said corporation shall raise or lower any such turnpike or highway pursuant hereto, and shall not so raise or lower the same as to be satisfactory to the proprietors of such turnpike, or to the town council of the town in which said highway may be situated, as the case may be, said proprietors or town council may require in writing of said corporation, such alteration or amendment as they shall deem necessary."

Said Providence and Worcester Railroad Company located and constructed its railroad under a highway then existing, known as Lonsdale avenue, and constructed over its tracks in the line of said Lonsdale avenue a highway bridge, and maintained the same until the respondent corporation took possession of said railroad under a certain lease, since which time the respondent has maintained said bridge.

After the construction of said bridge, viz., in 1885, the Pawtucket Street Railway Company was incorporated, subject to the liabilities and restrictions set forth in chapters 152 and 158 of the Public Statutes. Section 3 of its charter is as follows:

"SEC. 3. Said corporation shall put all streets and highways, and every portion thereof,. over or through which they shall lay any rails, in as good condition as they were before the same were laid, and they shall keep and maintain in repair such portions of the streets and highways as shall be occupied by their tracks, and shall be liable for any loss or injury that any person shall sustain by reason of any carelessness, neglect, or misconduct of its servants and agents in the management, construction or use of said tracks or streets."

In 1904 an ordinance was passed granting said street railway company authority to lay rails in Lonsdale avenue, in that portion extending over the tracks of the respondent, and to operate cars not exceeding 42,000 pounds in weight when empty, or 60,000 pounds in weight when loaded.

For the rights granted to it by said city of Pawtucket said street railway company pays certain sums over and above the taxes on its property.

The Lonsdale avenue bridge is sufficiently strong to sustain the weight of the usual, ordinary, and regular highway traffic of the city, and is in a condition safe and convenient for travellers with their teams, carts, and carriages, but is not of sufficient strength to bear such unusual weights as a city road roller weighing from 24,000 to 40,000 pounds, nor the street cars authorized by the ordinance above referred to.

In June, 1905, the board of aldermen passed a resolution directing the respondent to strengthen the bridge, with which

direction the respondent declined to comply unless the street railway company should contribute toward the expense.

Within 450 feet of the bridge in question is a bridge sufficiently strong to sustain the weight of the trolley cars, the expense of strengthening the same having been borne by the respondent and said street railway company.

A photograph of the bridge and a plat of the locality are annexed to the statement.

The question is as to the extent of the duty of the respondent in the premises.

The charter of the respondent's predecessor requires the railroad to be so constructed as not to impede or obstruct the safe and convenient use of the highway.

This provision is to be taken strictly against the respondent and liberally in favor of the public. It is, for its corporate purposes, empowered to cross any highway, and if it is to exercise this power it is to do so in such manner as not to impede or obstruct the safe and convenient use of the highway.

In this case the highway was carried over the respondent's railroad on a bridge.

There can be no doubt, upon the reason of the case as well as upon authority, that this duty is a continuing one. If the bridge, though sufficient when built, yet in the course of time, by change of circumstances, by increase of population, by increase in the number of trains run, or for any other reasons, becomes insufficient, the company can not, on the ground of the original sufficiency of the structure, refuse to comply with a demand that the structure be so amended as to provide for the increased traffic or weight due to changed conditions.

This principle has been illustrated in a number of adjudicated cases, and the language of the courts has varied with the varying facts.

"The legislature intended to provide against any obstruction of the safe and convenient use of the highway for all time, and if by the increase of population in the neighborhood, or by an increasing use of the highway, the crossing which at the outset was adequate is no longer so, it is the duty of the railroad corporation to make such alteration as will meet the present needs

of the public who have occasion to use the highway." *Cooke
v. B. &. L. R. R. Co.,* 133 Mass. 185.

This case construes a charter provision substantially like
that of the Providence and Worcester Railroad Company.

"It is a well-settled principle of the common law that any
person or corporation that cuts through a highway for the
benefit of such person or corporation, must furnish to the pub-
lic a proper crossing, even though acting under a license from
the proper authorities. It is a continuing condition insepara-
ble from the enjoyment of the franchise." *People* v. *C. &. A.
R. R. Co.,* 67 Ill. 118.

" This duty is a continuing one. It is not fulfilled by simply
putting the street, at the time the railroad is built, in such
condition as not to impair or interfere with its free and proper
use at that time, nor even by maintaining it in such condition
as would have accomplished that end had the circumstances
and conditions originally existing continued. The requirement
of the statute has a wider scope than this, and has reference to
all future exigencies. The legislature never intended to fix
or limit the duty of the company by the necessities of the public
at any one time, or under any particular state of circumstances.
They intended to impose upon the company the duty, from
time to time, of putting the street in such condition and state
of repair as changed circumstances—such as the increased
travel on the street, or increased traffic on the railroad—might
render necessary to its free and proper use." *State* v. *St. Paul,
etc., Ry. Co.,* 35 Minn. 131.

These cases establish the principle that the duty of the rail-
road company is a continuing one; that it is to keep the rail-
road so constructed as not to obstruct the public in its travel
over the street with the kind of conveyances and vehicles from
time to time in use. This principle would be applied to com-
pel the respondent to strengthen the bridge whenever by reason
of increase in the amount of travel over the street, or by reason
of the greater weight of vehicles in use by travellers, or for any
other reason, the bridge should become insufficient for the
highway traffic.

The petitioners claim that the application of this principle

requires the respondent to maintain the bridge of sufficient strength to support the weight of any street cars which may be operated by the Street Railway Company under the authority of the city of Pawtucket.

The respondent, on the other hand, claims that its duty is fulfilled if it maintains the highway in such a condition as to be "safe and convenient for travellers with their teams, carts, and carriages;" in other words, that the effect of the charter provision is to relieve the city of its statutory duty in regard to the highway, so far as the bridge is concerned, and impose this duty on the corporation.

I am of the opinion that this contention of the respondent is correct.

The respondent needed to cross this highway for its corporate purposes; in cutting through the highway it severed the two parts, and it was required to connect these in such a way as not to impede or obstruct its safe and convenient use. In other words, the highway, after the respondent had laid its track across and under it, was to be kept by it in the same condition as the town was required to keep it before such track was laid across and under it, viz., safe and convenient. The object of this statute was to throw upon the corporation cutting the highway the burden which but for that use of it would have to be borne by the town.

The duty of the town is to keep the highway safe and convenient for travellers with their teams, carts, and carriages: this duty, and, in my opinion, no higher or greater duty, is cast by the charter upon the respondent.

The city could not be compelled, if any of its streets were not in suitable condition for street car traffic, to put them in such condition at the demand of a street railway company, and it seems to me that the city is not warranted in demanding that the respondent do more than it, the city, could be compelled to do.

Most of the cases in which this matter has come before the courts have been brought to enjoin the use of the bridge by the street railway company.

Thus in *Carolina Central Railroad Co.* v. *Wilmington Street*

*Railway Co.*, 120 N. C. 520, the street railway company declined to unite with the plaintiff in maintaining the bridge, which was sufficient for the ordinary purposes of travel by foot and horse and vehicle transportation. The court, recognizing the duty of the plaintiff to maintain a bridge sufficient to meet the continuing demands of the public, held that the obligation did not extend to maintaining a bridge suitable for the running of street cars by a corporation formed for the profit of its stockholders and whose chief purpose is private gain and not the public good. "Street railways are, in a certain sense, highways, but not in the strict sense are they public ways; for their owners have private rights of property in the franchise and they are operated for the private benefit of their stockholders. The public benefits from street railways is only incidental." The court therefore held that the running of street cars over the bridge constructed by another corporation and sufficient for all other purposes imposes an additional servitude on the bridge, pointing out that this doctrine is not in conflict with the doctrine that the operation of a street railway does not impose any additional servitude on abutting owners.

*Conshohocken Rway Co.* v. *Penn. R. R. Co.*, 15 Pa. Co. Ct. 445, was a bill to enjoin the street railway company from running electric cars over a highway bridge crossing the railroad right of way. The court say, in the fourth "Conclusion of Law," "The bridge takes the place of the old road bed, and the burden of keeping it in repair must fall on the plaintiff; but it is not required to do more than would have been required of the township—that is, it must maintain a roadway at the bridge sufficient to meet the ordinary needs of travel. A township is not required to build bridges to meet the needs of a trolley company, and it follows that no such duty can be fastened upon the plaintiff."

And on page 452 the court say: "The plaintiff must keep up the highway bridge and relieve the township from any burden concerning it. This is a continuing duty. . . . It must repair or rebuild if necessary. But this does not require of it a strengthening of the bridge to meet the needs of the trolley company. We are aware that it has been held that the use

of a public road by an electric street railway is but a modern and improved use of the road as a public highway. . . . But this does not mean the township must build bridges to sustain trolley cars; and the duty of the plaintiff company in relation to the bridge in question rises no higher than that imposed on the township as to other bridges along the highway. The township must provide for the ordinary uses of the public roads. . . . If the time should come when any person may run a trolley car over the public highways, and such use is an ordinary use of the roads by the general public, then it may well be that the supervisors must make suitable provision for such travel."

*People* v. *Adams*, 88 Hun. 122, was a proceeding to review by *certiorari* the assessment on a railroad company of all the expense of building over its tracks a new bridge sufficiently strong to bear the weight of street railway cars. By the act under which the railroad company claimed, it was provided that any company availing itself of the provisions of certain sections thereof should construct the railroad with depressed tracks at every crossing of any street "and provide suitable over-crossing thereat, under direction of the city surveyor."

The court say: "This statute . . . like all other statutes, should receive a reasonable construction. The legislature certainly did not intend thereby to impose upon the railroad company, in constructing its crossing over the numerous streets in the city that its tracks should intersect, the building of structures that would withstand such enormous weight, which is far beyond that of the vehicles that ordinarily pass over the streets and highways."

This was affirmed by the Court of Appeals. 147 N. Y. 722.

It seems to me clear, therefore, that the obligation laid upon the respondent is to maintain this bridge in the same condition that the city is required by statute to maintain its streets, viz., safe and convenient for travellers with their teams, carts, and carriages.

And I think the city would be under no obligation to keep the highway safe and convenient for any vehicles not in or-

dinary use for the usual traffic of the people.   *Fox* v. *Clarke,*
25 R. I. 515.   *Gregory* v. *Adams,* 14 Gray, 242.

And that the city is under no obligation to provide a highway
suitable for the cars of the Pawtucket Street Railway Company
is made, if anything, more clear by a consideration of section
3 of the charter of that company—requiring it to put and main-
tain the streets in which they shall lay rails in as good condi-
tion as they were before the rails were laid.   And the require-
ment of this charter is by section 18 of chapter 187 of the
General Laws made applicable to every corporation main-
taining or using railroad tracks in any street or highway in
any town or city, and the same requirement as to condition
is imposed, viz., that the streets and highways may be safe
and convenient for travellers with their teams, carts, and
carriages.

The fact that the bridge is not of sufficient strength to bear
the weight of a road roller is not, in my opinion, enough to cast
upon the respondent the duty of *strengthening the bridge.*
The bridge is, according to the statement of facts, up to the
standard of safety and convenience which the statute exacts
of towns and cities, and I do not think the railroad is required
to provide for this unusual weight, especially in view of the
fact that a bridge of sufficient strength is located but a short
distance away.

Nor do I think that there is any merit in the petitioner's
suggestion that the respondent should strengthen the bridge
and then seek, by suit in equity, to enforce its rights against
the street railway company.   I do not understand that the
respondent has, or claims to have, any rights against the street
railway company at the present time; nor do I understand
what rights it would have after strengthening the bridge.   If
the bridge is strengthened by the respondent, whether of its
own volition or by order of the court, it will become a part of
the highway, and the city can authorize the street railway
company to lay tracks and run cars across it, and I do not think
the street railway company could be compelled to pay any
part of the cost of such strengthening.

For these reasons I do not think the petitioners have shown

any cause for a writ of *mandamus* to issue, and the petition is dismissed.