## MISSOURI PAC. RY. CO. v. CITY OF OMAHA.

(Circuit Court of Appeals, Eighth Circuit.  May 20, 1912.)

No. 3,587.

**1. CONSTITUTIONAL LAW (§ 297*)—REQUIRING CONSTRUCTION OF VIADUCT BY RAILROAD COMPANY—CONSTITUTIONALITY OF ORDINANCE.**

A city ordinance, passed under authority conferred by statute, requiring a steam railroad company to build a viaduct on a street over its tracks, and prescribing the material, strength, and dimensions thereof, cannot be held unconstitutional as depriving the company of its property without due process of law, because the structure specified is to be of sufficient width and strength to carry the traffic of a street railroad without requiring a street railroad company having a franchise to operate its road on the street to contribute to the cost.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 847; Dec. Dig. § 297.*]

**2. RAILROADS (§ 99*)—EXERCISE OF POLICE POWERS—REVIEW BY COURTS.**

Where authority is conferred on a city by statute to exercise the police power of the state by requiring the construction of viaducts over railroad crossings of streets for the safety and convenience of the public and prescribing the materials and dimensions of such structures, a case must be a clear one of abuse of discretion to justify the courts in interfering with the exercise of such power, and such abuse is not shown by the fact that an ordinance ordering such a viaduct built by a railroad company required the extension of one of the approaches further than would otherwise be necessary in order to clear a proposed boulevard not yet constructed by the city.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

**3. RAILROADS (§ 99*)—ORDINANCE REQUIRING CONSTRUCTION OF RAILROAD VIADUCT—VALIDITY.**

It is not essential to the validity of an ordinance requiring a railroad company to construct a viaduct on a street over its tracks that the grade crossing beneath should be entirely vacated and abandoned, but in the discretion of the city council it may be left for the convenience of owners of adjoining property.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Nebraska.

Suit in equity by the Missouri Pacific Railway Company against the City of Omaha.  Decree for defendant, and complainant appeals.  Affirmed.

Francis A. Brogan (Bailey P. Waggener and Martin L. Clardy, on the brief), for appellant.

John A. Rine (W. C. Lambert and Clinton Brome, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. [1] This is a suit by the Missouri Pacific Railway Company to enjoin the city of Omaha, Neb., from enforcing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an ordinance requiring it to construct at its sole expense a viaduct on Dodge street over its intersecting railroad tracks. The trial court dismissed the bill upon final hearing, and the company appealed.

It is not denied that power was conferred upon the city by state statute to require railway companies having tracks upon or across public streets to construct viaducts and approaches, and to prescribe the width, height, and strength thereof, the material to be used, and the manner of construction; but complaint is made that in the present instance the ordinance required a viaduct of sufficient width and strength to sustain the traffic of a street railroad on Dodge street at an additional cost for that reason of about $50,000, and, as the street railroad company was not required to contribute, the property of the complaining company was taken to that extent without compensation and without due process of law, contrary to the Constitution. Though the specified width and strength of the viaduct may have been essential to its use for street car traffic, the object the city had in view was, not the benefit or advantage of the street railroad company, but, on the contrary, the safety and convenience of the public traveling over the street by any and every lawful means. The advantage that might accrue to the street railroad company was incidental to the exercise of a power the existence of which in the particular case cannot be doubted. The operation of street cars is a proper street use, and none the less so that the cars are commonly given certain rights of precedence over other vehicles on the streets, or that the business is usually conducted for profit by a corporation under a franchise. Not only is it a proper street use, but in populous communities it may be one of public necessity. The nature of the use is not affected by the matter of precedence over other traffic, which is largely for mechanical reasons, nor by the taking of fares under a corporate franchise. With legislative authority the business might even be conducted by the municipality itself. It may be conceded that, if the case before us were not one of the exercise of the police power of the state through the medium of a city, but were to be determined according to equitable principles, we would think the street railroad company should be required to contribute to the cost of the viaduct, and perhaps the city itself as the representative of other interests. But whether the power of the state is competently exercised or its exercise violates the Constitution of the United States is not to be determined by a court solely by its own sense of right and wrong. Legislation under the police power is naturally along general lines, and it is rare that immediate and exact justice is done to all who may be affected by it. The books are full of cases, which we are constrained to follow, of equal if not greater hardship in which special loss is uncompensated save by participation in the common public good. See citations in Railway v. Drainage Com'rs, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175. It must be admitted that the danger at crossings of steam railroads and public highways is largely due to the character of locomotive engines and railroad cars and the necessary methods of their operation, and it is not an unconstitutional exercise of the police power to impose upon the party chiefly responsible

for the danger the duty and cost of removing it. New York, etc., Railroad v. Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269; Grand Trunk Railway v. Indiana Railroad Commission, 221 U. S. 400, 31 Sup. Ct. 537, 55 L. Ed. 786. The extensive power conferred upon the city by the Nebraska statute was considered and upheld in Chicago, etc., Railroad v. Nebraska, 47 Neb. 549, 66 N. W. 624, 41 L. R. A. 481, 53 Am. St. Rep. 557; Id., 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed. 948. ·

[2] Complaint is also made that, in order to clear a proposed boulevard at right angles to Dodge street, the ordinance and plans require the east approach of the viaduct to be about 200 feet longer than otherwise necessary, thereby unreasonably increasing the cost of the structure. The Nebraska statute expressly conferred upon the city the power to determine the dimensions of the viaduct and approaches; but it is objected that the power has been abused. A court should regard such an objection with extreme caution, and all reasonable doubts should be resolved in favor of the valid exercise of the power. The case should be a clear one to justify judicial interference; debatable differences of opinion are not sufficient. It would be intolerable if the courts should lightly substitute their judgment for that of city officers as to details of municipal improvements such as the sufficiency of grades, the necessity for public highways, the dimensions and strength of bridges and viaducts, and the like. The city was lawfully authorized to impose upon the company the entire burden of a suitable structure without loss or cost to itself and to determine within reason what kind of a structure was needed. Clearly it could prescribe one that would not obstruct an existing highway or a highway in reasonable contemplation. According to a projected scheme of municipal improvement, a boulevard was planned to run at right angles to the viaduct near the east end. The location of the beginning of the approach within its limits would be a serious obstruction. Therefore the plans of the viaduct prescribed by the city carried the approach over and beyond the proposed highway. The company contends that, if certain feasible changes in the plans were made, the approach would be so shortened as not to reach the boulevard at all; but it appears that this would also necessitate the raising of the street grades, and whether that should be done with the probable damage to abutting property was for the city to determine. We do not agree with counsel that the purpose of the longer approach was to raise the street car tracks on Dodge street over the intersecting surface of the proposed boulevard. Entire good faith should be imputed to the city as well as a desire of the public good. Surface crossings of street car tracks and boulevards are so common that it cannot fairly be said that to attain such an unimportant object as to prevent a crossing in the present instance the city would arbitrarily plan an overhead structure which would be at once an expensive burden to the company and an obstruction and disfigurement of the proposed highway itself. If there is a practicable way of avoiding those results, it should be sought in conferences between the parties rather than by an appeal to a court for the extraordinary writ of injunction.

[3] It is also urged that the ordinance is void because the grade crossing of the railroad tracks under the viaduct was left open for travel, thereby negativing that necessity for an overhead structure upon which the power of the city depended. This is but another way of asserting that the requirement of a viaduct must be accompanied by a complete vacation or abandonment of the surface crossing—that the city is without power to require a railroad company to build a viaduct for less than all the street traffic. The contention is untenable. The necessity for the safety and protection of the public is the statutory warrant for the ordinance, but its extent is for the judgment of the municipality. Conditions might exist in which a mere footbridge for pedestrians would be regarded as sufficient. It is probable that in the present case the grade crossing was left for the convenience of those owning property and doing business under the viaduct and to lessen the injury to abutting property which would follow its vacation. But whether so or not, we cannot say as matter of law that an abuse of the power conferred by the statute has been shown.

Again, it is claimed the ordinance is void because the plans of the viaduct were too incomplete and indefinite to enable the company to proceed, and also because it was required under penalties of a misdemeanor to commence erection and construction within an impossibly short period. The plans are somewhat confused, but we think that when taken as a whole they are not subject to the objection made. The plans subsequent to those first made were undoubtedly intended and should be taken as a modification. The very ordinance which is attacked so indicates. The time limited for the commencement of work is short, but the ordinance does not mean a beginning of the physical structure to the exclusion of the usual preparations in good faith which necessarily precede the breaking of ground.

The decree is affirmed.

SANBORN, Circuit Judge (dissenting). It is undoubtedly true that the city of Omaha has derived from the police power of the state the power to compel the Missouri Pacific Railway Company to construct such viaducts over its tracks at street crossings as are necessary to protect the health and safety of those who use the ordinary methods of traffic by carts, teams, and carriages upon its streets. But this power is not without limit. It is not so great as to enable the city practically to confiscate the property of a railroad company when neither the safety, health, nor morals of the public demand such action. It is limited by the constitutional prohibition of the taking of private property without just compensation.

The street railway company is a corporation operating for gain for the benefit of its stockholders, private citizens. It has no right to occupy or use this street, or any street in the city of Omaha, without a license or grant from the city. Its use of the street, permitted by the city, is not an ordinary but an additional and extraordinary use. The street railway company cannot demand of the city that it shall expend $50,000, or any sum whatever, to carry its cars over the tracks of this railway company, or elsewhere upon the streets of the city.

And as the city is not required to do this, its attempt to compel the railway company to expend, for the private benefit of the street car company and its stockholders, $50,000 more than is necessary to provide a safe, sufficient, and convenient viaduct for all the ordinary traffic upon the street by teams, carts, and carriages, while it demands no expenditure by the street car company, is in my opinion unjustified by the necessity of the case, unreasonable, violative of the constitutional inhibition of the taking of private property without just compensation, and confiscatory. Carolina Central R. R. Co. v. Wilmington Street Ry. Co., 120 N. C. 520, 26 S. E. 913, 914; Briden v. New York, N. H. & H. R. Co., 27 R. I. 569, 65 Atl. 315, 317; People v. Adams, 88 Hun, 122, 126, 34 N. Y. Supp. 579; People v. Adams, 147 N. Y. 722, 42 N. E. 725; Conshohocken R. Co. v. Pennsylvania R. Co., 15 Pa. Co. Ct. R. 445; Detroit, Ft. Wayne & Belle Isle Ry. Co. v. Osborn, 189 U. S. 383, 390, 23 Sup. Ct. 540, 47 L. Ed. 860; West Jersey & S. R. Co. v. Atlantic City & S. Traction Co., 65 N. J. Eq. 613, 56 Atl. 890.

The plan of the viaduct proposed by the city provides for the raise of the grade of Forty-Sixth street, which crosses Dodge street, on which the viaduct is to be built, at right angles at the western approach to the bridge, 3 feet, and makes the grade of the western approach 6.5 feet. A raise of the grade of the imaginary boulevard that the city claims may in some future time be built across Dodge street on the site of the Saddle Creek sewer 3 feet, a grade of 6.5 feet on the eastern approach, and a bridge floor 2 feet instead of 7 feet in thickness, which the engineers testify is equally safe and efficient, would bring all of the eastern approach west of the Saddle Creek sewer and would avoid the necessity of the expense of extending the eastern approach more than 200 feet over the imaginary boulevard and beyond the sewer. The requirement of that expenditure is in my opinion unjustified by necessity, obviously unreasonable and confiscatory, and the city ought to be enjoined from compelling it.

The order of the city attempts to impose upon the railway company a penalty of $100 for every day it delays in the construction of the viaduct. I think that the plans provided by the city were, at the time the order was made, so confused that it was not possible to determine with reasonable certainty their meaning, and that it was impracticable to follow them. For these reasons I am unable to concur in the view of the majority that the decree below should be affirmed. It seems to me that it ought to be reversed, and the city ought to be enjoined from enforcing its order for the construction of the viaduct according to its present scheme.