STATE, EX REL. CITY OF OMAHA, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY ET AL., APPELLANTS.

FILED OCTOBER 31, 1913. No. 17,621.

1. Statutes: VALIDITY: RAILROADS: CONSTRUCTION OF VIADUCTS. The statute authorizing the city of Omaha to require railway companies to construct above their tracks at street crossings such viaducts "as may be deemed and declared by the mayor and council necessary for the safety and protection of the public" is a valid exercise of police power.

2. Municipal Corporations: POLICE POWER: RAILROADS: VIADUCTS. Within constitutional and statutory limits, the mayor and council of the city of Omaha are the sole judges as to when and how the police power of the municipality shall be exercised in requiring railway companies to construct viaducts over their tracks where they cross public streets at grade.

3. ———: ORDINANCES: VALIDITY: RAILROADS: VIADUCTS. In considering the validity of an ordinance directing railway companies to construct a viaduct over tracks which cross a public street at grade, it will be presumed that the mayor and council acted with full knowledge of existing conditions relating to municipal legislation on that subject.

4. ———: POLICE POWER: RAILROADS: VIADUCTS: CLOSING STREETS. The city of Omaha, in the exercise of its police power, may require railway companies to construct a viaduct over their tracks, without making provision for closing the street where the tracks cross it at grade.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE.  *Affirmed.*

*William Baird & Sons, B. H. Dunham, Herman Aye* and *Edgar M. Morsman, Jr.,* for appellants.

*Benjamin S. Baker, John A. Rine, W. C. Lambert* and *L. J. Te Poel, contra.*

ROSE, J.

Relator applied for a peremptory writ of mandamus compelling defendants to construct at their own expense on Nicholas street, in Omaha, a viaduct running east and west over their intersecting railway tracks.  Defendants resist the application on the ground that the city attempted to require the construction of the viaduct without making provision for closing the street where their tracks cross it at grade.  The writ was allowed, and defendants have appealed.

Was the writ properly allowed?   Conforming to statutory procedure, the city, by adoption of plans, by resolution, and by ordinance, directed the railway companies to construct a viaduct on Nicholas street over ·their tracks, but made no provision for closing the street where the tracks cross it at grade.  The plans for the viaduct require a roadway 24 feet wide and a sidewalk space 8 feet wide, the whole to occupy about half the street along the north side.  A witness for defendants testified: "The plans of this proposed viaduct, so far as I know, are as well arranged as might be possible."  That the structure planned would be sufficient to accommodate the traffic of Nicholas street is not questioned.  Defendants admit that the grade crossing is dangerous and that a proper viaduct is essential to public safety.  Did the city exceed or abuse its authority?  Power to require railway companies to construct above their tracks at street crossings such viaducts "as may be deemed and declared by the mayor and council necessary for the safety and protection of the public" is

in direct terms conferred by the legislature upon the city of Omaha. Comp. St. 1911, ch. 12a, sec. 128. Such an enactment is a valid exercise of police power. *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549; *Phœnix Mutual Life Ins. Co. v. City of Lincoln,* 91 Neb. 150; *Chicago, B. & Q. R. Co. v. Nebraska,* 170 U. S. 57; *Chicago, B. & Q. R. Co. v. Chicago,* 166 U. S. 226; *New York & N. E. R. Co. v. Bristol,* 151 U. S. 556; *Northern P. R. Co. v. Duluth,* 208 U. S. 583; *State v. St. Paul, M. & M. R. Co.,* 98 Minn. 380.

To justify their refusal to comply with the demands of the city, defendants argue·that its action is void, because it attempted to burden them with the expenses of a viaduct which will not promote the public safety. In support of this defense they offered proof tending to show that they are willing to comply with proper plans for a viaduct; that the one planned by the city would be a detriment to them in the operation of their trains across Nicholas street, and that, to avoid inclines at the approaches and exposure to wind, rain, heat, and cold, the public would continue to use the unclosed street where it crosses the tracks at grade. What is a proper viaduct? It is not the province of the railway companies to determine that question as a police regulation. The municipal action which resulted in the demand for a highway over defendants' tracks, where they cross Nicholas street, was the exercise of police power—an attribute of sovereignty committed by the legislature to the city, but not to defendants. Within constitutional limits, the mayor and council are the sole judges as to when and how such police power shall be exercised. *State v. Withnell,* 91 Neb. 101. In considering the question presented, defendants' conception of a proper viaduct, therefore, is·immaterial, except in so far as it may indicate in some way that the city abused or exceeded its authority. There is no greater merit in the assertion of defendants that the viaduct planned by the city would be detrimental to them in the operation of their trains across Nicholas street. The statutory justification for the exercise of the police power is "the safety and pro-

tection of the public." This was the primary object, rather than the convenience of the corporations which created a place of danger by crossing a public street at grade.

Would the public generally continue to use the grade crossing? Would obstructions supporting the viaduct and failure to use it make traffic on Nicholas street more dangerous than before? In attempting to answer these questions in the affirmative, defendants offered to prove that at Argenta, Kansas, where they say there is a viaduct similar to that planned by Omaha, 90 per cent. of the travel by foot and wagon crosses the railway track at grade. Proof of this nature was rejected by the trial court, but its admission and consideration would not result in a holding that the city of Omaha abused or exceeded its power. It is conceded that the viaduct planned would be sufficient to accommodate the traffic of Nicholas street. Provision has therefore been made for the safety of the public. If 90 per cent. of the people would voluntarily abandon a safe and convenient viaduct for a place of danger on railroad tracks among moving trains and engines, as defendants assert, the city would nevertheless have control of the grade crossing and of the public travel there. It would still have power to close the street and to protect the public. Its authority in that respect can neither be abandoned nor bartered away. It should not be presumed in advance that official obligations to protect the public will be neglected. Notwithstanding the offered proof, it will be presumed that the city, in passing ordinances, acted with full knowledge of the conditions relating to the subject of municipal legislation. *State v. Withnell,* 91 Neb. 101. While defendants were operating their railways at grade, industries sprung up on adjacent land. The owners thereof may have vested rights. Private individuals own real estate abutting on Nicholas street near the tracks of defendants. The closing of the street may interfere with private rights and damage private property. In passing ordinances, it was proper for the mayor and council to consider existing conditions and to relieve the city and

the defendants from unreasonable or unnecessary burdens. The consideration of such burdens may account for the present· failure to close the grade crossing. The right of the city to require defendants to construct the viaduct does not depend upon the closing of that part of the street in controversy. *People v. Union P. R. Co.*, 20 Colo. 186. In. *Missouri P. R. Co. v. City of Omaha*, 197 Fed. 516, a case involving a similar ordinance of the city of Omaha, Judge Hook, speaking for the United States circuit court of appeals (Eighth circuit) said: "It is also urged that the ordinance is void because the grade crossing of the railroad tracks under the viaduct was left open for travel, thereby negativing that necessity for an overhead structure upon which the power of the city depended. This is but another way of asserting that the requirement of a viaduct must be accompanied by a complete vacation or· abandonment of the surface crossing— that the city is without power to require a railroad company to build a viaduct for less than all the street traffic. The contention is untenable. The necessity for the safety and protection of the public is the statutory warrant for the ordinance, but its extent is for the judgment of the municipality. Conditions might exist in which a mere foot-bridge for pedestrians would be regarded as sufficient. It is probable that in the present case the grade crossing was left for the convenience of those owning property and doing business under the viaduct and to lessen the injury to abutting property which would follow its vacation. But whether so or not, we cannot say as matter of law that an abuse of the power conferred by the statute has been shown."

The conclusion is that the writ was properly allowed.

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., ·not sitting.